**John J. DOUGHERTY, Appellant**

v.

**PHILADELPHIA NEWSPAPERS, LLC, Harold Jackson, Paul Davis, David Boyer, Russell Cooke, Melanie Burney, Tony Auth and Monica Yant Kinney, Appellees.**

Superior Court of Pennsylvania.

Argued Sept. 18, 2013.

Filed Feb. 11, 2014.

Joseph R. Podraza, Philadelphia, for appellant.

Thomas E. Zemaitis, Philadelphia, for appellees.

BEFORE: BENDER, P.J., DONOHUE and MUSMANNO, JJ.

OPINION BY MUSMANNO, J.:

John J. Dougherty ("Dougherty") appeals from the Order denying his Motion to Disqualify the law firm of Pepper Hamilton, LLP ("Pepper") and its attorneys from serving as counsel to any party, witness or participant in Dougherty's defamation action against Philadelphia Newspapers, LLC, Harold Jackson, Paul Davis, David Boyer, Russell Cooke, Melanie Burney, Tony Auth and Monica Yant Kinney

(collectively, "Defendants"). Defendants have filed an Application to Quash the Appeal. We deny the Application to Quash, reverse the Order of the trial court and remand for the entry of an order barring Pepper and its attorneys from representing any party, witness or participant in the underlying defamation proceedings.

The trial court aptly summarized the history underlying the instant appeal as follows:

[Dougherty] filed a Praecipe to Issue writ of Summons against [Defendants] on March 30, 2009. He filed a Complaint on March 24, 2011. The Complaint stemmed from [Dougherty's] candidacy for the Pennsylvania Senate, First Senatorial District in 2008. The Complaint alleges [that] "[D]efendants engaged in [a] continuous and systematic campaign to harm [Dougherty's] reputation by publishing a series of articles and editorials disparaging [Dougherty]."

The matter before [the trial court] is [Dougherty's] Motion to Disqualify Counsel, 10/23/12. [Dougherty] requested the disqualification of [Pepper] as counsel for Defendants or any party, witness or other participant because of its alleged conflict having represented [Dougherty] in a substantially related matter. [Dougherty previously had] retained [Pepper] "regarding an open federal investigation related to a grand jury subpoena [that Dougherty] had received from the U.S. Attorney's Office." [Pepper] represented [Dougherty] and sent work invoices through February 2007. [Dougherty] argues [that Pepper] was privy to confidential communications, advised [Dougherty] concerning the grand jury subpoena and was present during a search of [Dougherty's] home.

[Dougherty] argues [that] a conflict of interest exists because [Pepper] intends to pursue numerous discovery requests, including U.S. Attorney files from the federal investigation[,] while defending this defamation claim.

Trial Court Opinion, 4/18/13, at 1–2 (citations omitted).

The trial court denied Dougherty's Motion to disqualify Pepper, after which Dougherty filed a Motion for reconsideration. The trial court denied reconsideration, as well as Dougherty's request to certify the trial court's Order for immediate appeal. Dougherty subsequently filed a Notice of Appeal and an Application to Stay the trial court proceedings pending the outcome of the instant appeal.[1] Defendants have filed an Application to Quash Dougherty's appeal as interlocutory. We first address Defendants' Application to Quash the Appeal.

■ Defendants argue that the denial of a motion to disqualify counsel is interlocutory and not appealable, citing, *inter alia*, *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 101 S.Ct. 669, 66 L.Ed.2d 571 (1981), *Middleberg v. Middleberg*, 427 Pa. 114, 233 A.2d 889 (1967), *Seifert v. Dumatic Indus.*, 413 Pa. 395, 197 A.2d 454 (1964), and *Pittsburgh & New England Trucking Co. v. Reserve Ins. Co.*, 277 Pa.Super. 215, 419 A.2d 738 (1980), in support. Defendants further argue that, because Pepper has imposed an ethical screen separating its present counsel from counsel who previously had represented Dougherty, there is no risk of the improper disclosure of materials. Application to Quash, ¶ 32.

■ To be immediately appealable, a trial court order must be either a final order under Pennsylvania Rule of Appel-

---

1. This Court issued a Rule to Show Cause why the appeal should not be quashed as interlocutory. Upon receiving Dougherty's response to the Rule, this Court discharged the Rule without ruling upon the appealability of the Order.

late Procedure 341, or a collateral order under Appellate Rule 313. *Vaccone v. Syken*, 587 Pa. 380, 899 A.2d 1103, 1106 (2006). There is no claim here that an order denying the disqualification of counsel is a final order. Therefore, we must determine whether the Order at issue is appealable as a collateral order.

■ A collateral order is defined as "an order separable from and collateral to the main cause of action where the right involved is too important to be denied review and the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost." Pa. R.A.P. 313(b). Our [Pennsylvania Supreme] Court has delineated three requirements that must be satisfied in order for the [collateral order] doctrine to apply. The order must be "separable from and collateral to the main cause of action;" it must involve a right that "is too important to be denied review;" and, "if review is postponed until final judgment, the claim will be irreparably lost." *Vaccone* [, 899 A.2d at 1106]. The doctrine is to be narrowly interpreted[,] as it is an exception to the rule of finality. *Id.; see also Rae v. Pennsylvania Funeral Directors Association*, 602 Pa. 65, 977 A.2d 1121, 1126 (Pa.2009).

*In re Reglan Litig.*, 72 A.3d 696, 699 (Pa.Super.2013).

Although the *Vaccone* court did not address the appealability of an order denying disqualification of counsel, its reasoning is instructive. In *Vaccone*, the party seeking disqualification averred that opposing counsel would be called as a witness in the matter. *Vaccone*, 899 A.2d at 1107. Under these circumstances, the Supreme Court concluded that the disqualification order would be inextricable from the merits of the case "because it would be impossible to determine the impact that the attorney's testimony would have on the outcome of the case." *Id.* The Supreme Court further recognized that the appellants would not irreparably lose their right of review of the disqualification order should the appeal be delayed until the conclusion of the trial. *Id.* Any error, the *Vaccone* Court concluded, could be corrected post-trial with the award of a new trial and the attorney's disqualification during that new trial. *Id.*

Based upon the above analysis, the *Vaccone* Court, adopting the rationale of the United States Supreme Court's decision in *Richardson–Merrell, Inc. v. Koller*, 472 U.S. 424, 105 S.Ct. 2757, 86 L.Ed.2d 340 (1985), held that an order *disqualifying* counsel does not satisfy the collateral order exception. *Vaccone*, 899 A.2d at 1107. The *Vaccone* Court, however, did not address whether an order *denying* the disqualification of counsel is appealable as a collateral order. In fact, in *Berkeyheiser v. A–Plus Investigations, Inc.*, 936 A.2d 1117 (Pa.Super.2007), this Court concluded that an appellant's colorable claim of attorney-client privilege and attorney work-product privilege can establish the propriety of immediate appellate review. *Id.* at 1124.

Cognizant of our Supreme Court's analysis in *Vaccone*, and this Court's holding in *Berkeyheiser*, our review in the instant case discloses that the parties have averred no facts establishing that the Order at issue is inextricable from the merits of the case.[2] Further, the record does not reflect that an immediate appeal will result in undue hardship to Defendants at this

---

**2.** We note the absence of any allegation that Pepper or one of its attorneys could be called as a witness.

stage of the proceedings. Finally, Dougherty has averred facts establishing a colorable claim of the potential disclosure of attorney work product and breach of attorney-client privilege, which could result in irreparable harm. *See Berkeyheiser*, 936 A.2d at 1124. Under these circumstances, we conclude that the underlying disqualification Order is appealable as a collateral order.[3] Accordingly, we deny Defendants' Application to Quash the Appeal, and address the merits of Dougherty's claims.

Dougherty presents the following claims for our review:

A. Whether the Trial Court erred when it refused to grant [Dougherty's] Motion to Disqualify [Pepper] ... by Orders dated December 24, 2012[,] and January 18, 2013, as counsel for [ ] Defendants, ... [Pepper] should be disqualified to preserve and protect privileged materials when, as here, this action is about events that occurred while Pepper represented Dougherty and Pepper now intends to use attorney-client, work product, and other privileged information acquired from their prior representation of Dougherty against him in this present[,] substantially related case[?]

B. Whether the Trial Court erred when it refused to grant [Dougherty's] Motion to Disqualify [Pepper,] ... by Orders dated December 24, 2012[,] and January 18, 2013, where [Dougherty] established that he did not waive the admitted conflict of interest, as Dougherty was never informed by Pepper of the conflict of interest that existed between their past representation of him and their current representation of Defen-

dants that was in substantially-related matters, and, further, no ethical screen has been authorized to protect confidential and privileged information in a circumstance where the conflict arises from a prior client of the firm, under Pa.[R.P.C.] 1.9[?]

C. Whether the Trial Court erred when it refused to grant [Dougherty's] Motion to Disqualify the Law Firm of Pepper [ ] after granting [Dougherty's] Motion for Reconsideration, as Defendants had acted to publicize facts about Dougherty which were not generally known, despite their ongoing duties to him as his former attorneys[?]

Brief for Appellant at 2–3.

■ Dougherty first claims that the trial court improperly denied his Motion to disqualify Pepper as counsel to Defendants. *Id.* at 17. Dougherty argues that Pepper's prior representation of him creates a substantial risk that Pepper would use confidential information, obtained through its prior representation, in the instant proceedings. *Id.* According to Dougherty, Pepper owes him a duty that includes keeping his confidences and not using the information that Pepper gathered from its prior representation against Dougherty. *Id.*

The Pennsylvania Supreme Court has repeatedly observed that the attorney-client privilege "is deeply rooted in our common law" and is "the most revered of our common law privileges." *Levy v. Senate of Pa.*, —— Pa. ——, 65 A.3d 361, 368–69 (2013) (quoting *Commonwealth v. Maguigan*, 511 Pa. 112, 511 A.2d 1327, 1333 (1986)). Our Supreme Court has explained that "[a]t common law, an attorney

---

**3.** The United States Supreme Court's decision in *Firestone*, the Pennsylvania Supreme Court's decisions in *Seifert* and *Middleberg*, and this Court's decision in *Pittsburgh & New England Trucking*, upon which the Defen-

dants rely, are fact-specific and did not involve the potential disclosure of attorney work product or privileged material. Defendants' reliance upon those cases is not persuasive.

owes a fiduciary duty to his client; such duty demands undivided loyalty and prohibits the attorney from engaging in conflicts of interest, and breach of such duty is actionable." *Maritrans v. Pepper Hamilton & Scheetz,* 529 Pa. 241, 602 A.2d 1277, 1283 (1992).

As our Supreme Court has recognized, [t]he General Assembly defines attorney-client privilege identically for purposes of criminal and civil law: "In a criminal proceeding [or civil matter,] counsel shall not be competent or permitted to testify to confidential communications made to him by his client, nor shall the client be compelled to disclose the same, unless in either case this privilege is waived upon the trial by the client." 42 Pa.C.S.A. §§ 5916, 5928. [The Supreme Court] recently observed that the purpose of the attorney-client privilege "is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Gillard [v. AIG Ins. Co.,* 609 Pa. 65, 15 A.3d 44,] 47 n. 1 [ (2011) ] (quoting *Upjohn Co. v. United States,* 449 U.S. 383, 389, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981)); *see also [Gillard,* 15 A.3d] at 57.…

*Levy,* 65 A.3d at 368.

This same duty of confidentiality is protected through Rule 1.9(a) of the Rules of Professional Conduct:

A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in … a substantially related matter in which that person's interest are materially adverse to the interests of the former client unless the former client gives informed consent.

Pa.R.P.C. 1.9(a).

██ In the context of Pennsylvania's Right to Know Law, 65 P.S. § 67.101 *et seq.*, our Supreme Court has explained that an attorney is prohibited from undertaking a representation adverse to a former client in a matter "substantially related" to that in which the attorney previously had served the client. *Estate of Pew,* 440 Pa.Super. 195, 655 A.2d 521, 545 (1994) (citing *Maritrans,* 602 A.2d at 1284). Further, the duty owed by an attorney to his or her client extends to members of the attorney's law firm:

Confidential information gained by one member of a law firm is imputable to other members of the same law firm. Therefore, a former client seeking to disqualify a law firm representing an adverse party on the basis of its past relationship with a member of the law firm has the burden of proving: (1) that a past attorney/client relationship existed which was adverse to a subsequent representation by the law firm of the other client; (2) that the subject matter of the relationship was substantially related; (3) that a member of the law firm, as attorney for the adverse party, acquired knowledge of confidential information from or concerning the former client, actually or by operation of law.

*Pew,* 655 A.2d at 545–46. "If the attorney might have acquired confidential information related to the subsequent representation, Pennsylvania Rule of Professional Conduct 1.9 would prevent the attorney from representing the second client." *Id.* at 545 (emphasis added).

By his Motion, Dougherty alleged that he had a past attorney-client relationship with Pepper. Motion to Disqualify, 10/22/12, at ¶ 20. Dougherty averred that Pepper represented Dougherty "regarding an open federal investigation related to a grand jury subpoena [Dougherty] received from the U.S. Attorney's Office." *Id.* According to Dougherty, Pepper's attorneys

were privy to confidential communications with Dougherty during the course of the investigation, as well as documents submitted by Dougherty in response to the subpoena. *Id.* Further, Pepper's attorneys had communicated with the federal investigators, and then counseled Dougherty regarding the documents to submit in response to the subpoena.[4] *Id.* at ¶¶ 21–22. In addition, a Pepper attorney consulted with Dougherty during the execution of a search warrant at Dougherty's home. *Id.* at 24. Thus, Dougherty has alleged a prior attorney-client relationship with Pepper.

Our review further discloses that the subject matter of Pepper's prior representation of Dougherty is substantially related to the present matter, and that a member or members of Pepper's law firm acquired confidential information from Dougherty. In his Complaint, Dougherty averred that Defendants published a series of articles and editorials comparing him with former state senator Vince Fumo ("Fumo"), who was tried for corruption. Complaint, 3/24/11, at ¶ 19. In particular, an April 13, 2008 editorial stated,

> [Dougherty] denies sending goons to intimidate people whenever it suits his union's interests. **He denies accepting valuable favors from a lifelong friend and union colleague, as outlined in a federal criminal indictment against the friend. He denies that the feds found anything incriminating when they searched his home**....

*Id.* (emphasis added). Also on April 13, 2008, Dougherty averred, Defendants published an article stating, in relevant part, that

[i]n 2003, according to federal authorities, [Dougherty] bought a North Wildwood condo from an electrician pal for $24,000 less than what you or I would have had to pay because he could, never mind that the law forbids contractors from plying union leaders with grafts.

*Id.* at ¶ 20. Dougherty further asserted that on April 17, 2008, Defendants published an editorial implied that Dougherty had accepted a bribe from a developer. *Id.* at ¶ 24.

Further, during a case management conference held on October 1, 2012, Michael E. Baughman, Esquire, of Pepper, represented that "he intended to take action to obtain from the Federal Government the U.S. Attorney's files related to an alleged investigation into [ ] Dougherty." *Id.* at ¶ 16 (citing Motion to Disqualify, Exhibit "B" (N.T., 10/1/12, at 16–17)).[5] Dougherty averred, and Pepper confirmed, that Defendants would explore the subject of Pepper's representation of Dougherty, *i.e.*, the federal investigation, as part of its defense. *Id.* at ¶ 25; Exhibit "B" (N.T., 10/1/12, at 16).

Thus, Dougherty has established that during Pepper's prior representation, a Pepper attorney "might have acquired confidential information related to the subsequent representation[.]" *Pew*, 655 A.2d at 545. Pennsylvania Rule of Professional Conduct 1.10 provides that "[w]hile lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rule ... 1.9." Pa.R.P.C. 1.10. Under the circumstances presented, we conclude that Pennsylvania

---

4. One of the federal prosecutors, to whom a Pepper attorney spoke, is now a partner at Pepper. Motion to Disqualify, 10/22/12, at ¶ 22 n. 2.

5. Dougherty conceded that he was aware of Defendants' prior discovery requests pertaining to the federal investigation, but had intended not to produce such document based upon relevancy. Complaint, 3/30/09, at ¶ 17.

Rules of Professional Conduct 1.9 and 1.10 bar Pepper's representation of Defendants in the instant matter. *See Pew*, 655 A.2d at 545 (stating that "[c]onfidential information gained by one member of a law firm is imputable to other members of the same law firm.").

■ As to Dougherty's second claim, our review discloses that Dougherty did not waive Pepper's conflict through any delay in filing the Motion to Disqualify Pepper. Dougherty commenced the instant defamation action, by Writ of Summons, on March 30, 2009. Complaint, 3/24/11. On June 9, 2009, the matter was docketed as "Deferred" based upon a suggestion of bankruptcy filed on behalf of a defendant. Praecipe to Defer, 6/9/09. On February 25, 2011, Dougherty filed a Praecipe to reissue the summons. On March 3, 2011, during the deferral, Defendants' prior counsel withdrew its representation and Amy B. Ginensky, Esquire, an attorney with Pepper, entered her appearance on behalf of Defendants.

Although some discovery ensued during the deferral, the docket reflects that the trial court formally removed the deferral on January 30, 2012, upon the dismissal of the bankruptcy. At the October 1, 2012 case management conference, an attorney from Pepper specifically announced his intention to seek discovery related to the federal investigation. Motion to Disqualify, Exhibit "B" (N.T., 10/1/12, at 16). Dougherty filed his Motion to Disqualify less than one month later, on October 22, 2012. Under these circumstances, the record does not support a finding that Dougherty waived Pepper's conflict through a delay in filing his Motion to Disqualify.

In summary, the record reflects that (a) the Rules of Professional Conduct bar Pepper's current representation of Defendants in a matter substantially related to Pepper's prior representation of Dougherty; and (b) Dougherty did not waive Pepper's conflict through a delay in filing a disqualification motion. Accordingly, we reverse the Order of the trial court and remand for entry of an Order barring Pepper and its attorneys from representing Defendants in this matter.[6]

Application to Quash denied; Order reversed; case remanded for entry of an Order disqualifying Defendants' counsel and the law firm of Pepper Hamilton LLP; Superior Court jurisdiction relinquished.

Donohue, J., files a Concurring Opinion.

## CONCURRING OPINION BY DONOHUE, J.:

I concur in the learned Majority's decision to deny Pepper Hamilton's Application to Quash and to reverse the trial court's order denying Dougherty's Motion to Disqualify Counsel. I write separately to clarify my position on certain issues and to state additional reasons for supporting reversal.

First, with respect to Pepper Hamilton's Application to Quash, pursuant to Rule 313 of the Pennsylvania Rules of Appellate Procedure, an interlocutory order may be deemed collateral if it satisfies a three-prong test: (1) it is separable from the main cause of action; (2) the right involved is too important for review to be denied; and (3) the question presented must be such that if review is postponed until final judgment the claim will be irreparably lost. Pa.R.A.P. 313(b); *Ben v. Schwartz*, 556 Pa. 475, 481, 729 A.2d 547, 550 (1999).

---

**6.** Based upon our resolution of Dougherty's first two claims, we need not address his third claim on appeal.

In determining whether the right involved is too important to be denied review, the right must be deeply rooted in public policy such that it goes beyond the controversy at hand. *Id.* at 484, 729 A.2d at 552. With respect to the third prong of the test, there must be no other effective means of review available after final judgment. *Id.; Feldman v. Ide,* 915 A.2d 1208, 1211 (Pa.Super.2007).

In my view, the trial court's order denying Dougherty's Motion to Disqualify Counsel is collateral and thus presently ripe for appeal. The first prong of the collateral order test is clearly satisfied, as the issues relating to Pepper Hamilton's disqualification are separable from the merits of Dougherty's claims of defamation as set forth in his complaint against, *inter alia,* Philadelphia Newspapers, LLC.

With respect to the second prong of the test, Dougherty's Motion to Disqualify Counsel is based upon allegations that Pepper Hamilton has violated Rule 1.9 of Pennsylvania's Rules of Professional Conduct. This rule of disqualification is designed to protect "a client's secrets and confidences by preventing even the possibility that they will subsequently be used against the client in related litigation." *Goodrich v. Goodrich,* 158 N.H. 130, 136, 960 A.2d 1275, 1280 (2008) (quoting *Tekni–Plex, Inc. v. Meyner and Landis,* 89 N.Y.2d 123, 131, 651 N.Y.S.2d 954, 958, 674 N.E.2d 663, 667 (1996)). As such, the primary concern in cases involving Rule 1.9 is whether "confidential information that might have been gained in the first representation may be used to the detriment of the former client in the subsequent action." *Commonwealth Ins. Co. v. Graphix Hot Line, Inc.,* 808 F.Supp. 1200, 1204 (E.D.Pa.1992) (quoting *Realco Services, Inc. v. Holt,* 479 F.Supp. 867, 871 (E.D.Pa.1979)).

In this case, Pepper Hamilton does not deny that its attorneys obtained protectable attorney-client confidences during its prior representation of Dougherty, and instead claims only that an ethical screen will minimize or eliminate the use of such confidences by its attorneys in the present case.[1] Pepper Hamilton's Brief at 18. Under Pennsylvania law, however, confidential information gained by one member of a law firm "is imputable to other members of the same law firm." *Estate of Pew,* 440 Pa.Super. 195, 655 A.2d 521, 545 (1994); Pa.R.P.C. 110(a) ("while lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rule[ ] ... 1.9."). Our Supreme Court has repeatedly held that claims implicating the possible disclosure of confidential attorney-client information satisfy the "importance" prong of the collateral order test, as the protection of client confidences is deeply rooted in this Commonwealth's public policy and impacts individuals other than those involved in the instant litigation. *See, e.g., Commonwealth v. Harris,* 612 Pa. 576, 585, 32 A.3d 243, 248 (2011) (citing *Ben v. Schwartz,* 556 Pa. 475, 484, 729 A.2d 547, 552 (1999)).

Finally, with respect to the third prong of the collateral order test, no effective means of review would be available here after final judgment. As our Supreme Court recently reaffirmed in *Harris,* "[w]e are particularly unconvinced that an appeal after final judgment is an adequate vehicle for vindicating a claim of privilege." *Harris,* 612 Pa. at 586, 32 A.3d at 249. Once client confidences have been disclosed, the attorney-client privilege has been effectively destroyed and the disclo-

---

**1.** I will address the use of an ethical screen in this case at greater length *supra.*

sure cannot be undone. *Id.* at 585–86, 32 A.3d at 248–49.

On appeal, Pepper Hamilton does not argue that the trial court's order denying Dougherty's Motion to Disqualify Counsel fails to satisfy either of the three prongs of the collateral order test. Instead, relying on a line of old cases, Pepper Hamilton asserts that a blanket prohibition exists against treating any order denying a motion to disqualify counsel as a collateral order under Pa.R.A.P. 313. This line of cases begins with *Seifert v. Dumatic Indus.*, 413 Pa. 395, 397, 197 A.2d 454, 457 (1964), in which our Supreme Court quashed as interlocutory an appeal from an order denying a motion to disqualify, and *Middleberg v. Middleberg*, 427 Pa. 114, 115, 233 A.2d 889, 890 (1967), in which our Supreme Court quashed as interlocutory an appeal from an order granting a motion to disqualify. In subsequent cases, this Court, following the holdings in *Seifert* and *Middleberg* without any additional analysis, quashed appeals from orders denying motions to disqualify. *See, e.g., Flood v. Bell*, 287 Pa.Super. 515, 430 A.2d 1171, 1172–73 (1981), *Pittsburgh and New England Trucking Company v. Reserve Insurance Company*, 277 Pa.Super. 215, 419 A.2d 738, 739–40 (1980).[2]

In *Seifert* and *Middleberg*, our Supreme Court ruled only that orders ruling on disqualification motions were not final orders, as they did not terminate the litigation in the trial court. *Seifert*, 413 Pa. at 397, 197 A.2d at 457; *Middleberg*, 427 Pa. at 115, 233 A.2d at 890. Neither case addressed whether such orders may in appropriate circumstances be treated as collateral orders, however, since both cases were decided well before Pennsylvania courts recognized that collateral order rule as an alternative basis for appellate jurisdiction. While it had been recognized in federal courts since the United States Supreme Court's decision in *Cohen v. Beneficial Industrial Loan Corporation*, 337 U.S. 541, 546, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), the collateral order rule was not applied in Pennsylvania until our Supreme Court did so in *Bell v. Beneficial Consumer Discount Company*, 465 Pa. 225, 228, 348 A.2d 734, 735 (1975), and *Pugar v. Greco*, 483 Pa. 68, 73, 394 A.2d 542, 545 (1978). The collateral order rule formally recognized in March 1992 with the adoption of Pa.R.A.P. 313. Pa.R.A.P. 313 Note ("Rule 313 is a codification of existing law with respect to collateral orders.") (citing *Pugar*). As a result, neither *Seifert, Middleberg*, nor the cases relying upon them support Pepper Hamilton's contention that all orders denying motions to disqualify are interlocutory and not appealable as collateral orders.

To the extent that the *Seifert* and *Middleberg* line of cases had any continuing vitality, this ended with our Supreme Court's decision in *Vaccone v. Syken*, 587 Pa. 380, 899 A.2d 1103 (2006). In *Vaccone*, the Supreme Court affirmed this Court's decision to quash an appeal from an order granting a motion to disqualify counsel. This holding itself is not relevant for present purposes, since an order *removing* counsel from a case carries with it none of the concerns regarding the disclosure of attorney-client confidences discussed hereinabove. Importantly in *Vaccone*, howev-

---

**2.** In *In re: L.J.*, 456 Pa.Super. 685, 691 A.2d 520 (1997), this Court refused to quash an appeal from a final order because the appellant had not appealed the trial court's prior denial of a motion to disqualify counsel. *Id.* at 528 n. 8. We so ruled because we found that the trial court's prior order regarding disqualification was interlocutory, citing to, *inter alia, Middleberg* and *Flood*, without any separate analysis of the three prong test under Pa.R.A.P. 313(b). *Id.* For the reasons set forth herein, including the Supreme Court's subsequent decision in *Vaccone*, *L.J.* has no application in this case.

er, the Supreme Court reached its decision solely by considering the three prongs of the collateral order test in Pa.R.A.P. 313(b). It did not rely on any blanket rules regarding orders granting or denying disqualification motions, and did not even cite to *Seifert* or *Middleberg* in its opinion.

For this reason, in my view the correct approach is to apply the three-prong test in Rule 313(b) to the facts of each particular case. As demonstrated hereinabove, in this case the possibility of possible disclosure of confidential attorney-client information compels the conclusion that the order in question here satisfies all three prongs of the test and thus is a collateral order currently ripe for consideration on appeal.

With respect to the trial court's decision that Dougherty waived the Rule 1.9 conflict here by not filing his Motion to Disqualify Counsel in a timely fashion, I agree with the Majority that the certified record does not support the trial court's findings. At the status conference on October 1, 2012, Attorney Michael Baughman of Pepper Hamilton (on behalf of the Appellees) advised the trial court that while the case had been filed for some time and written discovery had been exchanged, bankruptcy proceedings and an unrelated case involving Dougherty and other employees of Philadelphia Newspapers LLC (then on appeal to this Court) had delayed any significant litigation efforts by either party. N.T., 10/1/2012, at 10–15. Specifically, Attorney Baughman advised the trial court that "[t]here has been an agreement to sort of stay—I mean, informally, you know, you don't have to respond to ours, and then we'll respond to yours 30 days later." *Id.* at 10. Based upon this informal stay, Attorney Baughman further advised that neither party had responded to any discovery requests up to that date.

*Id.* at 10–11. Attorney Baughman also informed the trial court that he intended to seek documents and information directed from the federal government relating to the federal investigation referenced in Dougherty's complaint. *Id.* at 16. While previously exchanged written discovery had requested from Dougherty documents relating to the federal investigation, this new revelation by Attorney Baughman highlighted Appellees' intention to focus on the details of the federal investigation in its defense against Dougherty's defamation allegations. Pepper Hamilton's prior representation of Dougherty was in connection with this same federal investigation, and thus I agree with the Majority that Dougherty's filing of the Motion to Disqualify Counsel just 23 days later was not untimely.

More fundamentally, however, I disagree with the Majority's acquiescence with the trial court's contention that a client may waive a conflict of interest under Rule 1.9 merely by failing to raise it in a timely fashion. To my knowledge, no Pennsylvania appellate court has ever held that a client must timely raise a Rule 1.9 conflict, and no language of the Pennsylvania Rules of Professional Conduct so indicates. To the contrary, the text of Rule 1.9 provides how a client may waive a conflict—by giving informed consent:

### Rule 1.9. Duties to Former Clients

(a) A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client *unless the former client gives informed consent.*

(b) A lawyer shall not knowingly represent a person in the same or a substantially related matter in which a

firm with which the lawyer formerly was associated had previously represented a client

> (1) whose interests are materially adverse to that person; and

> (2) about whom the lawyer had acquired information protected by Rules 1.6 and 1.9(c) that is material to the matter;

> ***unless the former client gives informed consent.***

Pa.R.P.C. 1.9(a)-(b) (emphasis added).

Rule 1.0(e) defines "informed consent" as follows:

### Rule 1.0. Terminology

\* \* \*

> (e) "Informed consent" denotes the consent by a person to a proposed course of conduct after the lawyer has communicated adequate information and explanation about the material risks of and reasonably available alternatives to the proposed course of conduct.

Pa.R.P.C. 1.0(e). The Explanatory Comment to Rule 1.0 provides a detailed explanation of the attorney's obligations to obtain informed consent:

> The lawyer must make reasonable efforts to ensure that the client or other person possesses information reasonably adequate to make an informed decision. Ordinarily, this will require communication that includes a disclosure of the facts and circumstances giving rise to the situation, any explanation reasonably necessary to inform the client or other person of the material advantages and disadvantages of the proposed course of conduct and a discussion of the client's or other person's options and alternatives. In some circumstances it may be appropriate for a lawyer to advise a client or other person to seek the advice of other counsel. A lawyer need not inform a client or other person of facts or implications already known to the client or other person; nevertheless, a lawyer who does not personally inform the client or other person assumes the risk that the client or other person is inadequately informed and the consent is invalid.

Pa.R.P.C. 1.0 Explanatory Comment.

Rule 1.9 clearly requires the attorney to obtain the informed consent of the client when a conflict under the rule exists by, *inter alia*, making all reasonable and necessary disclosures to the former client and, where appropriate, advising the former client to seek independent legal advice as to whether to provide the requested informed consent or not.[3] Nothing in the text of Rule 1.9, or the Rules of Professional Conduct generally, is there any suggestion that counsel facing a Rule 1.9 conflict may, rather than affirmatively attempting to obtain informed consent, instead take no action at all vis-à-vis its former client and wait to see if the former client fails to raise it in a timely fashion. To the contrary, Rule 1.9 expressly provides that a former client may waive a conflict in just one way—by giving informed consent after receiving and consid-

---

**3.** The Explanatory Comment to the definition of "informed consent" provides that "generally a client or other person who is independently represented by other counsel in giving the consent should be assumed to have given informed consent." Pa.R.P.C. 1.0 Explanatory Comment. For this statement to apply, the former client must first seek independent legal advice regarding whether to give the re- quested informed consent. Nothing in the current certified record, however, suggests that Dougherty obtained any such independent legal advice regarding Pepper Hamilton's Rule 1.9 conflict of interest, so his informed consent may not be assumed in this case. Likewise, nothing in the certified record reflects that Dougherty filed the Motion to Disqualify Counsel as a delay tactic.

ering all reasonably necessary disclosures from counsel regarding the precise nature of the conflict and the "material advantages and disadvantages of the proposed course of conduct and a discussion of the client's or other person's options and alternatives." Pa.R.P.C. 1.0 Explanatory Comment.

In finding waiver, the trial court stated as follows:

> It is common for law firms to build ethical screens such as Pepper Hamilton utilized. Further, it is apparent there was no intentional deception here. We determined, [Dougherty] is a sophisticated litigant and, therefore, he either told his attorneys of Pepper Hamilton's previous representation or he didn't tell them as he was willing to waive the potential conflict.

Trial Court Opinion, 4/18/2013, at 7. In so finding, the trial court improperly placed on the former client (Dougherty) the onus of taking affirmative action to avoid the consequences of Pepper Hamilton's Rule 1.9 conflict of interest. As discussed, the Rules of Professional Conduct unquestionably place that onus on Pepper Hamilton, namely to obtain Dougherty's informed consent after providing all reasonable and necessary disclosures. While Pepper Hamilton did not engage in any intentional deception, nothing in the certified record on appeal indicates that Pepper Hamilton took any affirmative steps to obtain Dougherty's informed consent in this case.

Finally, contrary to the trial court's suggestion, Pepper Hamilton's use of an "ethical screen" is essentially irrelevant in these circumstances. As Pepper Hamilton acknowledges, the existence of an ethical screen does not overcome a conflict of interest under Rule 1.9.[4] Appellees' Brief at 24 n. 16. Pursuant to Pa.R.P.C. 1.10, an

---

**4.** Pepper Hamilton argues that the existence of the ethical screen did not overcome the Rule 1.9 conflict, but rather that "it was [Dougherty's] own waiver that precluded any reliance on the conflict." Appellees' Brief at 24 n. 16. Because this Court concludes that Dougherty did not waive the conflict, the Rule 1.9 conflict necessitates Pepper Hamilton's disqualification.

In this regard, the trial court points out that "[v]iolating ethical rules is not necessarily grounds for disqualification." Trial Court Opinion, 4/18/2013, at 7 (citing to *Maritrans GP Inc. v. Pepper, Hamilton & Scheetz*, 529 Pa. 241, 602 A.2d 1277 (1992)). In *Maritrans*, a former client filed a separate action against a law firm, citing to conflicts of interest under Pa.R.P.C. 1.7 and 1.9. *Id.* at 245, 602 A.2d at 1279. In affirming the trial court grant of a preliminary injunction precluding the representation of certain clients with conflicting interests, our Supreme Court did state that a "violation of the ethical rules concerning misuse of a client's confidences is not as such a basis for issuing an injunction." *Id.* at 256, 602 A.2d at 1284.

The trial court's reliance on this statement is misplaced here, however, as the Supreme Court made clear that it was the breach of the attorney's common law obligations to the client, which are incorporated and reflected in the current ethical rules, which ultimately gives rise to the power of courts to enjoin or disqualify counsel when violated. *Id.* at 256, 602 A.2d at 1284 ("Long before the Code of Professional Responsibility was adopted, and before the Rules of Professional Conduct were adopted, the common law recognized that a lawyer could not undertake a representation adverse to a former client in a matter 'substantially related' to that in which the lawyer previously had served the client."). The Supreme Court concluded that no distinction existed between enjoining continued representation and the grant of a motion to disqualify. *Id.* at 256–57, 602 A.2d at 1285 ("A motion for disqualification is simply an injunctive order issued in a case already pending."). To this end, the Supreme Court made clear that where a conflict of interest implicating client confidences exist, "[a] court may restrain conduct which it feels may develop into a breach of ethics; it 'is not bound to sit back and wait for a probability to ripen into a certainty.'" *Id.* at 255, 602 A.2d at 1284 (quoting *United States v. RMI Co.*, 467 F.Supp. 915, 923 (W.D.Pa.1979)).

ethical screen may be used to permit continued representation of a former client despite a Rule 1.9 conflict of interest only when the conflict is created by a new lawyer to the firm who brings the conflict with him as a result of his prior employment. Pa.R.P.C. 1.10(b)(1). Other than in this situation, which is not presented here, an ethical screen will not insulate a law firm from the consequences of a Rule 1.9 conflict of interest.