J-A06010-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

| | | |
|---|---|---|
| MICHAEL SPINNEWEBER | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TRACY A. CUNNINGHAM | : | |
| | : | |
| Appellant | : | No. 790 WDA 2022 |

Appeal from the Order Entered June 2, 2022
In the Court of Common Pleas of Butler County Civil Division at No(s):
21-90181-D

BEFORE:   OLSON, J., NICHOLS, J., and PELLEGRINI, J.[*]

MEMORANDUM BY OLSON, J.:                 **FILED: August 22, 2023**

Appellant, Tracy A. Cunningham ("Wife"), appeals from the June 2, 2022 order denying her amended motion to disqualify counsel for Michael Spinneweber ("Husband").  We affirm.

Husband and Wife were married on October 15, 2001.  On March 25, 2021, Husband filed a complaint for divorce in Butler County Court of Common Pleas.  At that time, Husband was represented by Robert W. Galbraith, Esquire.  On March 18, 2022, Husband changed counsel and retained Jill D. Sinatra, Esquire ("Attorney Sinatra") and the firm Gilliland, Vanasdale, and Sinatra Law Office, LLC ("GVS Law").

---

[*] Retired Senior Judge assigned to the Superior Court.

On April 27, 2022, Wife filed the instant motion, seeking to disqualify Attorney Sinatra and GVS Law.[1]  In her motion, Wife alleged that Attorney Sinatra and GVS Law "ha[d] a direct conflict of interest" because, in August 2013, Husband and Wife met with Attorney Sinatra regarding litigation involving Husband's business, MLG Land Development (hereinafter, the "2013 Consultation").   Wife's Amended Motion, 4/27/22, at *1 (unpaginated). During the 2013 Consultation, Wife claimed the parties provided to Attorney Sinatra "detailed information concerning their business operations, their roles within their business operations" and "plans for addressing not only [a] pending litigation[ matter,] but also other ongoing business matters." **Id.**  In addition, Wife alleged that, in July 2014, when Attorney Sinatra was associated with Lisa Marie Vari & Associates, Wife consulted with Attorney Sinatra about potentially divorcing Husband (hereinafter, the "2014 Consultation").  **Id.** at *2.  During the 2014 Consultation, Wife alleged that she "provided detailed and privileged information concerning the parties' marriage, business assets and income." **Id.**

Husband filed a response to Wife's motion the same day.   Initially, Husband argued the 2013 Consultation never occurred, pointing to the lack of evidence and to the fact that, in 2013, Attorney Sinatra was a solo

---

[1] On March 31, 2022, Wife filed a motion seeking to disqualify Attorney Sinatra.  Wife later withdrew her motion.  Then, on April 21, 2022, Gary T. Vanasdale, Esquire, and Jen GV Gilliland Vanasdale, Esquire, of GVS Law entered their appearances on Husband's behalf. **See** Praecipe for Appearance, 4/21/22, at 1.

practitioner, focusing exclusively on criminal defense and family law, not civil litigation. Husband's Response, 4/27/22, at *2 (unpaginated). Husband, however, admitted that, at the alleged time of the 2014 Consultation, Attorney Sinatra worked at Lisa Marie Vari & Associates and that, upon investigation, records of the 2014 Consultation existed. *Id.* at *5. Attorney Sinatra nonetheless claimed that she did not recall the 2014 Consultation and that she possessed no records relevant to the matter. *Id.*

On May 3, 2022, the trial court conducted a hearing on Wife's motion, during which Lisa Vari and Wife testified.[2] At the outset of the hearing, the parties stipulated that Attorney Sinatra did, in fact, work at Lisa Vari & Associates in 2014. Attorney Vari testified that her records indicated Wife "was sent a fee agreement," but she "did not have any notes of a consultation on hand" or "any documents that [Wife] may have submitted." N.T. Hearing, 5/3/22, at 10-11. Attorney Vari explained it was her policy to discard any information or documentation obtained from a consultation if, within two years of a consultation, a person did not sign a fee agreement and, as such, retain her firms' services. *Id.* at 11. Attorney Vari also explained that, in 2014, Attorney Sinatra was the "main person" conducting divorce consultations and she did not employ any other female associates resembling Attorney Sinatra during the relevant time. *Id.* at 12. Attorney Vari admitted, however, that

---

[2] Jaloyn Fockler also testified. N.T. Hearing, 5/3/22, at 46-48. Her testimony did not pertain to either the 2013 or the 2014 Consultation. *Id.*

she did not know, for certain, who conducted the 2014 Consultation, its duration, or what information was conveyed. *Id***.** at 23-24.

Thereafter, Wife testified. At the outset, Wife admitted the 2013 Consultation did not occur, but "was very certain" that Attorney Sinatra participated in the 2014 Consultation. *Id***.** at 25-26 and 31. Wife testified that she "kept all of [the] copies of . . . the information [she] provided" to Attorney Sinatra during the 2014 Consultation, as well as the fee agreement from Lisa Marie Vari & Associates, and a business card with Attorney Sinatra's name handwritten on it.[3] *Id***.** at 26. Wife also described the documents and information she brought to the 2014 Consultation as follows:

> copies of three years of tax returns, both personal and business, . . . some bank statements, some credit card statements, pay stubs, information pertaining to investment accounts, some copies of some property deeds, as well as . . . [a] summary of all assets and liabilities. … And some balance sheets from the business [and] . . . a list of questions.

*Id***.** at 29. Wife, however, stipulated that "many of the records provided [during the 2014 Consultation] were not confidential" because they related to accounts or properties held jointly with Husband. *Id***.** at 35. Nonetheless, Wife claimed she disclosed "intimate details about [her] relationship with [Husband]" and conveyed concerns about the parties' business during the consultation. *Id***.** at 31. Ultimately, Wife admitted she did not retain Lisa

---

[3] Wife stated that Attorney Sinatra wrote her name on the business card because "she just joined with the firm not that long ago and she did [not] have her own business cards yet at that time." N.T. Hearing, 5/3/22, at 28.

Marie Vari & Associates to represent her in divorce proceedings. *Id.* at 31 and 38. Thereafter, on June 1, 2022, the trial court denied Wife's motion. This timely appeal followed.

Wife raises the following issues on appeal:

[Whether the trial court abused its discretion or committed an error of law in denying Wife's motion to disqualify Attorney Sinatra and GVS Law?]

Wife's Brief at 3-4.[4]

_____

[4] Wife's Statement of the Questions Involved on appeal is, as follows:

1. Did Wife's [] divorce consultation with [Attorney] Sinatra constitute an attorney-client relationship affording Wife privileges and protections when both Wife and [Attorney] Sinatra's former employer provided uncontroverted testimony and evidence that the consultation was extensive, that confidential information and documents information contrary to Wife's interests were provided to [Attorney] Sinatra during the meeting, and when [Attorney] Sinatra's former employer testified that as per the practice of her firm during the time of the consult and [at the time of Attorney Sinatra's employment], the consultation was conducted so as to include privileged information and therefore created a conflict of interest between [Wife and Attorney] Sinatra's former employer as well as [Attorney] Sinatra individually?

2. Did the Court [of Common Pleas of Butler County] commit an abuse of discretion or error of law in denying Wife's [] motion to disqualify [Attorney] Sinatra and GVS [Law] when Wife provided uncontroverted testimony and corroborating evidence that she had consulted with [Attorney] Sinatra, testified that the nature of the information provided to [Attorney] Sinatra at the meeting would be harmful to Wife should Husband [] or his representatives gain access, [Wife] believed that she was subject to a privilege when she spoke with [Attorney] Sinatra, [Attorney] Sinatra was not screened from the matter by GVS and in fact [Attorney] Sinatra

*(Footnote Continued Next Page)*

This Court previously stated:

> [A]n order denying a motion to disqualify a law firm based on conflict of interest is immediately appealable as a collateral order. ***Dougherty v. Phila. Newspapers, LLC***, 85 A.3d 1082, 1086 (Pa. Super. 2014); ***see also*** Pa.R.A.P. 313 (governing collateral orders).

Furthermore:

> When reviewing a trial court's order on disqualification of counsel, we employ a plenary standard of review. Courts may disqualify attorneys for violating ethical rules. On the other hand, courts should not lightly interfere with the right to counsel of one's choice. Thus, disqualification is appropriate only when both another remedy for the violation is not available and it is essential to ensure that

---

> litigated preliminary issues [in the divorce proceeding between Husband and Wife] and when [H]usband presented no evidence whatsoever to contradict Wife's evidence contrary to that provided by Wife?

Wife's Brief at 3-4. Undoubtedly, Wife's Statement of Questions Involved utterly fails to comport with Pa.R.A.P. 2116's requirements as it is anything but concise. ***See*** Pa.R.A.P. 2116(a) ("The statement of the questions involved must state concisely the issues to be resolved, expressed in terms and circumstances but without unnecessary detail"); ***see also id***. at cmt. (explaining that, while "the page limit for the statement of questions involved" was eliminated, "verbosity continues to be discouraged. The appellate courts strongly disfavor a statement that is not concise"). Moreover, Wife's brief is not divided into sections corresponding to each of her questions presented, in violation of Pa.R.A.P. 2119 ("The argument shall be divided into as many parts as there are questions to be argued"). In fact, Wife recognizes that, while she set forth two separate issues, they are "inextricably intertwined" and elects to "address [both issues] together." Wife's Brief at 20. It is within this Cour's power to quash an appeal for clear violation of our appellate rules. ***See Barrick v. Holy Spirit Hosp. of the Sisters of Christian Charity***, 32 A.3d 800, 804 n.6 (Pa. Super. 2011) (*en banc*), *aff'd*, 91 A.3d 680 (Pa. 2014) (citations omitted). While we caution against the failure to abide by our appellate rules, we conclude that Wife's brief is not so defective as to hamper our review. ***See id***. We will therefore consider Wife' claims on the merits.

> the party seeking disqualification receives the fair trial that due process requires.

> **E.R. v. J.N.B.**, 129 A.3d 521, 526 (Pa. Super. 2015) (citation omitted).

**Rudalavage v. PPL Elec. Utils. Corp.**, 268 A.3d 470, 478 (Pa. Super. 2022) (footnoted omitted). The party seeking disqualification bears the burden of proof. **See Doughtery**, 85 A.3d at 1087 (explaining that "a former client seeking to disqualify a law firm representing an adverse party on the basis of its past relationship with a member of the law firm has the burden of [proof]"). To warrant disqualification, the party must "make a clear showing that continued representation would be impermissible." **Wise v. U.S. Healthcare**, 1996 WL 908697 *1, *3 (Pa. C.P. Bucks Cnty. Jan. 19, 1996), *citing* **Commercial Credit Business Loans Inc. v. Martin**, 590 F.Supp 328, 335 (E.D. Pa. 1984); **see also Tiversa Holding Corp. v. LabMD, Inc.**, 2013 WL 6796538 *1, *2 (W.D. Pa. Dec. 20, 2013) (applying Pennsylvania law) ("Clear evidence must be provided by the moving party to establish that ongoing representation is impermissible.").[5]

---

[5] Our research has revealed that while Pennsylvania courts have not addressed the precise issues raised in this matter, federal courts have applied Pennsylvania law in this situation. **See Miller v. Se. Pennsylvania Transp. Auth.**, 103 A.3d 1225, 1231 (Pa. 2014) ("As we have noted in the past, while [the Pennsylvania Supreme] Court is not bound by decisions of the federal Courts of Appeals, we may, and at times do, look to them for guidance.").

Pennsylvania Rule of Professional Conduct 1.9 governs the relationship between an attorney and former client. It provides, in pertinent part, as follows:

> (a) A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent.

Pa.R.P.C. 1.9(a). Pennsylvania Rule of Professional Conduct 1.18, on the other hand, outlines the duties owed to a prospective client. It states:

> (a) A person who consults with a lawyer about the possibility of forming a client-lawyer relationship with respect to a matter is a prospective client.
>
> (b) Even when no client-lawyer relationship ensues, a lawyer who has learned information from a prospective client shall not use or reveal information which may be significantly harmful to that person except as Rule 1.9 would permit with respect to information of a former client.
>
> (c) A lawyer subject to paragraph (b) shall not represent a client with interests materially adverse to those of a prospective client in the same or a substantially related matter if the lawyer learned information from the prospective client that could be significantly harmful to that person in the matter, except as provided in paragraph (d). If a lawyer is disqualified from representation under this paragraph, no lawyer in a firm with which that lawyer is associated may knowingly undertake or continue representation in such a matter, except as provided in paragraph (d).
>
> (d) When a lawyer has learned information as defined in paragraph (c), representation is permissible if:
>
> > (1) both the affected client and the prospective client have given informed consent, or;
> >
> > (2) all of the following apply:

(i) the disqualified lawyer took reasonable measures to avoid exposure to more disqualifying information than was reasonably necessary to determine whether to represent the prospective client;

(ii) the disqualified lawyer is screened from any participation in the matter and is apportioned no part of the fee therefrom; and

(iii) written notice is promptly given to the prospective client.

Pa.R.P.C. 1.18.

Herein, Wife argues an attorney-client relationship was formed between her and Attorney Sinatra following the 2014 Consultation. Wife's Brief at 23-25. As such, Wife claims that the matter is governed by Rule 1.9 of the Rules of Professional Conduct and requests this Court to follow the analysis and reasoning set forth in **Dougherty**, **supra**. **Id.** at 20-23. Husband, however, argues that, even if Attorney Sinatra conducted the 2014 Consultation, which he disputes, Rule 1.18 of the Rules of Professional Conduct applies. Husband's Brief at 11-13. Upon review, we agree with Husband.

The evidence adduced during the May 3, 2022, hearing revealed that, while Wife consulted with an attorney at Lisa Marie Vari & Associates, there was neither follow-up nor further action between Wife and the law firm. Importantly, the fee agreement provided to Wife following the 2014 Consultation read, in relevant part, as follows:

Work on your case will not begin, and you should not consider this office as being retained by you as your legal counsel, until payment of the above-stated fees and this agreement is

received by our office. Upon receipt of the signed agreement and payment, a staff member will promptly contact you to schedule any necessary appointments or to obtain additional information. We look forward to serving your legal needs.

Wife's Amended Petition, 4/27/22, at Exhibit B. Wife never signed the fee agreement or otherwise retained Lisa Marie Vari & Associates to represent her. N.T. Hearing, 5/3/22, at 31 and 38. Hence, even if Attorney Sinatra conducted the 2014 Consultation, no attorney-client relationship was formed and, as such, Rule 1.18 dictates our mode of analysis. **See Danielsen v. Pennsylvania College of Technology**, 2014 WL 5088226 *1, *2 (M.D. Pa. 2014) (applying Pennsylvania law) (holding that the matter was governed by Rule 1.18 because the evidence demonstrated that the plaintiff "merely consulted with an attorney at the McCormick Law Firm on only one occasion on November 21, 2022 and there was no further interaction between [the p]laintiff and the law firm" and, as such, it was "clear to [the c]ourt that no lawyer-client relationship was ever formed.").

As stated above, Rule 1.18 provides protection to prospective clients. In particular, Rule 1.18(c) prohibits an attorney from engaging a client with material adverse interests to that of a prospective client in the same or substantially related matter if, during the consultation, the attorney learned "significantly harmful" information. Pa.R.P.C. 1.18(c). If Rule 1.18(c) disqualifies an attorney, however, his or her firm may continue representation if the firm complies with Rule 1.18(d). **See id.** at (d).

In this instance, Wife argues the "subject matter" of the 2014 Consultation and the instant proceedings is "not just 'substantially related,' it is identical." Wife's Brief at 26. In addition, Wife claims that she "provided confidential information to counsel concerning a divorce from [Husband]," "documentation including, *inter alia*, an asset list that contained 'personal notes and thoughts,'" and "prepared a list of questions to discuss at the consultation." *Id.* Accordingly, Wife asserts disqualification is warranted.

Upon review, we conclude that, while Wife is correct in her assertion that the 2014 Consultation substantially relates to the instant matter, she failed to demonstrate that, if Attorney Sinatra participated in the 2014 Consultation, she acquired information significantly harmful to Wife. Indeed, during the May 3, 2022 hearing, the parties stipulated that, during the 2014 Consultation, Wife only produced documents pertaining to accounts and assets she shared jointly with Husband and, as such, none were confidential. *See* N.T. Hearing, 5/3/22, at 35. Hence, Wife's sole basis for disqualification was her bald assertion that she disclosed "confidential information" during the 2014 Consultation. Wife's Brief at 26. Wife, however, failed to provide any evidence in support of this claim. In fact, while Wife acknowledged that the "[r]ules . . . require . . . a description of the type of confidential [information]" disclosed, Wife failed to provide such a description and, instead, simply testified that she "reveal[ed] . . . intimate details about [her] relationship with [H]usband." *Id.* at 31 and 35. Thus, the trial court found "that the testimony purporting to establish an attorney-client relationship [was] equivocal." Trial

Court Opinion, 6/20/22, at 2. We similarly conclude that Wife's "conclusory allegations, which [were] not backed by evidence, do not warrant the extreme remedy of attorney disqualification." *Jackson v. Rohn & Haas Co.*, 366 Fed. Appx. 342, 347 (3d Cir. 2010).

Furthermore, Attorney Sinatra averred that she had "no memory of or records of the [2014 C]onsultation." Husband's Response, 4/27/22, at *4 (unpaginated). Importantly, other courts have previously declined to "disqualify specific lawyers who represented parties with interest adverse to those of former potential clients when the specific lawyers had forgotten the substance of their discussions." *Tiversa Holding Corp.*, 2013 WL 6796538 at *4 (applying Pennsylvania law) (declining to disqualify attorneys because they "never even met with, and had no knowledge of the details of prior meetings with [the defendants]") (citation omitted); *see also DOCA Co. v. Westinghouse Electric Co., L.L.C.*, 2012 WL 5877580 *1, *4 (W.D. Pa. 2012) (applying Pennsylvania law) ("Under these circumstances[,] we fail to see how Caldon could be significantly harmed as a result of the disclosure of the 1998 documents in September 2004 to an attorney who does not recollect the documents in a case that is awaiting the [c]o0urt's resolution of motions for summary judgment."). In light of the foregoing, we similarly conclude that Attorney Sinatra was not in possession of, or had access to, material that was

significantly harmful to Wife and, as such, the trial court correctly denied Wife's amended motion to disqualify counsel.[6]

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/22/2023

---

[6] Because we concluded that the trial court correctly declined to disqualify Attorney Sinatra as Husband's counsel, we need not address Wife's contention regarding GVS Law.