2022 PA Super 3

| | | |
|---|---|---|
| MARY ANN RUDALAVAGE, INDIVIDUALLY AND AS THE ADMINISTRATOR OF THE ESTATE OF JOHN RUDALAVAGE, DECEASED | : : : : : : : : : : : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | | |
| | | No. 237 MDA 2021 |
| PPL ELECTRIC UTILITIES CORPORATION | | |
| Appellant | | |

Appeal from the Order Entered January 26, 2021
In the Court of Common Pleas of Lackawanna County
Civil Division at No(s): 19 CV 5026

BEFORE: PANELLA, P.J., MURRAY, J., and STEVENS, P.J.E.[*]

OPINION BY MURRAY, J.: **FILED: JANUARY 4, 2022**

PPL Electric Utilities Corporation (Appellant) appeals from the order denying its motion to disqualify the law firm of Munley Law, P.C. and its attorneys (Munley or Munley firm) from representing Mary Ann Rudalavage (Rudalavage), individually and as administrator of the estate of John Rudalavage (decedent), the plaintiff in the underlying personal injury action brought against Appellant in the Lackawanna County Court of Common Pleas. After careful review, we reverse and remand for the entry of an order precluding the Munley firm from representing Rudalavage.

_____

[*] Former Justice specially assigned to the Superior Court.

On November 27, 2017, the decedent lost control of his vehicle while driving on a private road owned by Appellant. Decedent hit a guardrail, was ejected from his vehicle, and died as a result of his injuries. On August 26, 2019, Rudalavage filed a complaint against Appellant asserting wrongful death and survival claims. Rudalavage was represented by the Scranton-based Munley firm, which is comprised of approximately ten attorneys and specializes in personal injury law. Specifically, Rudalavage was represented by two attorneys other than John M. Mulcahey, Esquire (Mulcahey or Attorney Mulcahey),[1] who we discuss below. On September 23, 2019, Appellant filed preliminary objections to the complaint, after which Rudalavage filed a response.

On October 21, 2019, Appellant filed a motion to disqualify the Munley firm and its attorneys as counsel for Rudalavage based on conflict of interest in violation of the Pennsylvania Rules of Professional Conduct. Appellant noted that Mulcahey previously represented Appellant on numerous occasions during his 18-year tenure at the law firm of Lenahan & Dempsey, P.C. (Lenahan), where he was employed prior to joining Munley in February 2014. Appellant argued:

> While representing [Appellant] in numerous active litigation matters, Attorney Mulcahey was responsible for all phases of litigation . . . .

---

[1] Although Mulcahey was not counsel of record for Rudalavage, he had involvement in the case.

- 2 -

In the course of his representation, Attorney Mulcahey was responsible for reviewing and analyzing [Appellant's] confidential and proprietary records for numerous reasons, including preparing [defense] litigation strategy, assessing claims, and determining the relevancy and discoverability of documents.

* * *

Because of Attorney Mulcahey's intimate and lengthy representation of [Appellant] in forming and asserting [] defenses, he clearly has confidential knowledge that would severely prejudice [Appellant], such as knowing what to ask for in discovery, which witnesses to seek to depose, . . . what settlements to accept and what offers to reject, and innumerable other uses.

Motion to Disqualify, 10/21/19, at 3, 7-8 (paragraph numbering omitted; citations and quotations omitted).  Appellant argued Pennsylvania Rule of Professional Conduct 1.9[2] prohibited Mulcahey from representing Rudalavage in this matter.  *Id.* at 8.  Appellant further asserted that Mulcahey's conflict of interest should be imputed to all attorneys at the Munley firm pursuant to Rule of Professional Conduct 1.10 (governing imputed disqualification of a law firm).  *Id.* at 8-9.

_____

[2] Under Rule 1.9, attorneys owe duties to former clients: "A lawyer who has formerly represented a client in a matter shall not thereafter . . . represent another person in the **same or a substantially related matter** in which that person's interests are materially adverse to the interests of the former client . . . ."  Pa.R.P.C. 1.9(a) (emphasis added); *see also* Pa.R.P.C. 1.9(c) (stating an attorney with a conflict of interest under this Rule is prohibited from disclosing or using information related to a prior representation).  Rule 1.9 explains that matters "are 'substantially related' for purposes of this Rule if they involve the same transaction or legal dispute or if there otherwise is a substantial risk that confidential factual information as would normally have been obtained in the prior representation would materially advance the client's position in the subsequent matter."  Pa.R.P.C. 1.9, cmt. 3.

Pertinently, Rule 1.10(b) provides:

(b) When a lawyer becomes associated with a firm, the firm may not knowingly represent a person in the same or a substantially related matter in which that lawyer, or a firm with which the lawyer was associated, had previously represented a client whose interests are materially adverse to that person and about whom the lawyer had acquired information protected by Rules 1.6 and 1.9(c) that is material to the matter **unless**:

(1) **the disqualified lawyer is screened** from any participation in the matter and is apportioned no part of the fee therefrom; and

(2) **written notice is promptly given** to the appropriate client to enable it to ascertain compliance with the provisions of this rule.

Pa.R.P.C. 1.10(b) (emphasis added); *see also* Pa.R.P.C. 1.0(k) (defining "screened" as "the isolation of a lawyer from any participation in a matter through the timely imposition of procedures within a firm that are reasonably adequate under the circumstances to protect information that the isolated lawyer is obligated to protect under these Rules or other law."). "**Confidential information gained by one member of a law firm is imputable to other members of the same law firm**." *Estate of Pew*, 655 A.2d 521, 545 (Pa. Super. 1994) (emphasis added); *see also* Pa.R.P.C. 1.10, cmt. 2 ("The rule of imputed disqualification . . . gives effect to the principle of loyalty to the client as it applies to lawyers who practice in a law firm. Such situations can be considered from the premise that a firm of lawyers is essentially one lawyer for purposes of the rules governing loyalty to the client").

Appellant attached to its motion to disqualify an affidavit executed by Andrea Martino (Martino). At the time she signed the affidavit, Martino had worked in Appellant's Office of General Counsel for approximately 17 years, first as a legal claims specialist, and later as legal operations manager. Affidavit, 10/18/19, at 1-2. Martino stated:

> As Claims Specialist, I was directly responsible for assigning claims made against [Appellant] to outside counsel and working directly with outside counsel and appropriate employees of [Appellant] in defending these claims.

> * * *

> During his representation of [Appellant], Attorney Mulcahey was retained to represent [Appellant] in no less than forty-eight (48) matters in which [Appellant] required the assistance of outside counsel. Further, Attorney Mulcahey had direct involvement in over thirty-five (35) active litigation matters. . . .

> * * *

> During his representation of [Appellant], Attorney Mulcahey was intimately involved with generally all aspects of litigation, such as investigations, pleadings, discovery, motions, alternative dispute resolutions, witness preparation, settlement discussions, and trials. Moreover, Attorney Mulcahey learned [Appellant's] confidential litigation strategies and philosophy.

> * * *

> As a result of his representation of [Appellant] generally, Attorney Mulcahey, and by imputation Munley [], possess intimate knowledge and familiarity with [Appellant's] confidential business and privileged information as to [Appellant's] policies, practices, and litigation strategy.

> * * *

- 5 -

The underlying facts of this personal injury lawsuit are substantially similar to Attorney Mulcahey's prior representations of [Appellant], and will involve information of a similar character and degree as Attorney Mulcahey was privy to throughout his [approximately 18-]year attorney-client relationship with [Appellant].

*Id.* at 2-5 (paragraph numbering omitted). Martino also stated that Appellant never waived the conflict of interest created by Mulcahey's representation. *Id.* at 5.

On November 20, 2019, Rudalavage filed a response to the motion to disqualify, arguing, *inter alia*:

Attorney Mulcahey had a past attorney/client relationship with [Appellant]. It is specifically denied that the underlying facts of those types of cases are substantially similar to the underlying facts of this case. Attorney Mulcahey's representation of [Appellant] ended almost six (6) years ago. Thus, any alleged confidential or proprietary information that he may have obtained would be obsolete. As such, disqualification is not appropriate in this action. Additionally, Attorney Mulcahey has not represented [Appellant] for any claims arising out of the subject roadway. During the course of his representation of [Appellant], Attorney Mulcahey has not gained any information regarding the subject roadway or any of the facts underlying the subject action. In fact, the incident that caused injury to [the decedent] in the instant action occurred in 2017, approximately three (3) years after Attorney Mulcahey had terminated his representation of [Appellant]. Therefore, it is impossible for Attorney Mulcahey to have obtained any confidential or privileged information regarding the subject matter of this litigation. . . .

Response to Motion to Disqualify, 11/20/19, at ¶ 42.

Approximately two years earlier, in July 2017, Appellant filed a separate motion to disqualify Mulcahey and the Munley firm from representing Matthew Darrow (Darrow), the plaintiff in a personal injury case Mulcahey filed against

Appellant in the Lackawanna County Court of Common Pleas.[3]  On August 9, 2019, the trial court granted Appellant's motion in part and disqualified Mulcahey from representing Darrow.  However, the court found the record was not sufficiently developed to determine whether disqualification of the Munley firm was appropriate under Pa.R.P.C. 1.10(b).  Thus, the trial court scheduled an evidentiary hearing.

On January 24, 2020, the trial court held a joint evidentiary hearing in the Rudalavage and Darrow matters to address Appellant's respective motions to disqualify Munley.  Appellant presented the testimony of Martino and Joel Compton (Compton); Compton previously worked in Appellant's Office of General Counsel as a legal claims coordinator.  Munley, on behalf and Rudalavage and Darrow, presented testimony from Mulcahey and Maria Elkins (Elkins), Munley's chief operations officer.

Mulcahey testified that during the 18 years he worked at Lenahan, he served as outside counsel for Appellant.  N.T., 1/24/20, at 85.  Mulcahey acknowledged handling "as many as 40 or 50 cases" for Appellant.  *Id.* at 97.  On some occasions, Mulcahey collaborated with Martino and Compton in defending Appellant.  *Id.* at 97-100.  Mulcahey stated that at no time did he discuss with attorneys at Munley any "proprietary knowledge," "trial

_____

[3] In Darrow, Mulcahey filed a writ of summons on behalf of Darrow in June 2017; Darrow suffered injuries after his vehicle collided with a utility pole owned by Appellant.

strategies" or "settlement strategies" Mulcahey may have learned while representing Appellant. *Id.* at 92-93. Further, although Mulcahey did not represent Rudalavage as counsel of record, he attended an inspection of the accident scene with an expert retained on Rudalavage's behalf. *Id.* at 94, 102. Moreover, Mulcahey "reviewed the complaint" drafted by a Munley attorney. *Id.* at 102; *see also id.* (Mulcahey stating "I don't think I made any subsequent changes to the complaint."). On cross-examination, Mulcahey acknowledged he "gathered a lot of information relevant to the defense of [Appellant's] casualty cases while [he was] with Lenahan[.]" *Id.* at 97-98. Mulcahey conceded there was no attorney screening protocol in place at the Munley firm when he met with the expert and conducted a site inspection in the Rudalavage case. *Id.* at 103. Mulcahey further stated he had never seen a written protocol from Munley concerning a conflict screen. *Id.* at 108, 117. Mulcahey testified that Munley created the screen after the August 9, 2019 order disqualifying him in the Darrow case. *Id.* at 116; *but see also id.* at 107 (Mulcahey stating on cross-examination that he and another attorney at the Munley firm determined "we don't believe there's a conflict" regarding the Rudalavage matter, "but because of [the trial court's] decision in the Darrow case, we were willing to put up a wall."). Mulcahey stated he was not involved in the Rudalavage or Darrow cases after August 9, 2019. *Id.* at 93.

Elkins testified that she had worked for Munley since 2016. *Id.* at 69. Although not a lawyer, she is responsible for the creation, implementation and

adherence to firm policies and procedures. *Id.* at 70. Elkins stated she created the screening protocol to bar Mulcahey's access to case files in the Darrow and Rudalavage matters. *Id.* at 71. Elkins elaborated in an affidavit, stating: "Following the [] August 9, 2019 order [disqualifying Mulcahey] . . ., I developed a screening protocol specifically to preclude . . . Mulcahey from accessing any files, information or data in the possession of Munley[.]" Affidavit, 1/24/20, at ¶ 6.[4] She testified the physical case files for both Darrow and Rudalavage are locked in her office. N.T., 1/24/20, at 72. Elkins stated that Munley staff have been instructed not to discuss the two cases with Mulcahey, and were advised that doing so could result in disciplinary action, up to and including termination. *Id.* at 73. Further, Elkins explained Mulcahey would not receive any fees in either the Darrow or Rudalavage case. Affidavit, 1/24/20, at ¶ 15. On cross-examination, Elkins acknowledged she is not a lawyer and had never created a screening protocol until September 2019, after Mulcahey was disqualified. *See* N.T., 1/24/20, at 79-80, 83. Elkins also stated the screening protocol had been put in writing; however, she did not produce evidence of any writing, and there is no documentation of a written protocol in the record. *Id.* at 81. Elkins testified that none of the Munley firm attorneys signed a screening protocol. *Id.*

_____

[4] Appellant asserts that this affidavit, which Elkins executed on the morning of the disqualification hearing, was "the first time [Appellant] was provided *any* detail about [Munley's] supposed screen[.]" Appellant's Reply Brief at 1 (italics in original).

- 9 -

Next, Appellant presented testimony from Martino, Appellant's legal operations manager. *Id.* at 21. During Martino's nearly 18 years of employment with Appellant, she coordinated with outside legal counsel, including Mulcahey, to formulate litigation defense strategy. *Id.* at 22. Martino described the various duties Mulcahey performed when he represented Appellant, which involved analyzing legal claims in defending personal injury/wrongful death actions, giving recommendations as to liability, propounding discovery, witness preparation and accident site evaluation, and developing settlement strategy. *Id.* at 25-34. Martino testified that Mulcahey had access to Appellant's proprietary records, internal policies, and other confidential information. *Id.* at 31, 35.

Finally, Compton testified that he previously worked for Appellant in its Office of General Counsel. *Id.* at 48; *see also id.* at 49-50 (Compton stating his job responsibilities were similar to those of Martino). Compton worked with Mulcahey on numerous casualty defense cases. *Id.* at 48, 50.

By memorandum and order entered January 26, 2021, the trial court denied Appellant's request for disqualification of Munley as to both Darrow and Rudalavage, concluding Munley's "screening process is adequate."

Memorandum and Order, 1/26/21, at 9. Appellant timely appealed.[5] Both

Appellant and the trial court have complied with Pa.R.A.P. 1925.

On appeal, Appellant presents the following issue for our consideration:

Whether the trial court erred in denying [Appellant's] Motion to Disqualify Munley Law, P.C. ("Munley Law") because Munley Law failed to meet its burden of demonstrating compliance with Pa.R.P.C. 1.10(b) by timely and effectively screening Attorney John Mulcahey from participation in this litigation and by promptly giving written notice to [Appellant] of same, given, among other things:

(a) Attorney Mulcahey's substantial and long-standing prior relationship with [Appellant] in which he defended dozens of cases filed against [Appellant] and worked closely with its Office of General Counsel;

(b) Munley Law disavowed that Attorney John Mulcahey had a conflict of interest;

(c) Attorney Mulcahey admittedly worked on this litigation by attending an accident scene inspection with an expert and reviewing the Complaint to be filed against [Appellant];

(d) Munley Law never provided written notice of (1) the conflict of interest or (2) information concerning its purported screening protocol to [Appellant] prior to the January 24, 2020, hearing on [Appellant's] Motion to Disqualify;

(e) Munley Law did not produce its purported screening protocol;

(f) Munley Law never had Attorney Mulcahey or other attorneys at the firm sign its purported screening protocol;

_____

[5] Appellant also appealed the disqualification ruling in the Darrow case; the appeal is before this panel, docketed at No. 236 MDA 2021, and addressed in a separate decision.

(g) Munley Law has never confirmed that Attorney Mulcahey has not disclosed to other attorneys at Munley Law any confidential information he acquired during his previous representation of [Appellant];

(h) the timing of the purported screening protocol, which was not implemented, if ever, until after this litigation commenced; and

(i) the relatively small size of Munley Law with only eleven attorneys.

Appellant's Brief at 5-6.

Preliminarily, we observe that an order denying a motion to disqualify a law firm based on conflict of interest is immediately appealable as a collateral order. ***Dougherty v. Phila. Newspapers, LLC***, 85 A.3d 1082, 1086 (Pa. Super. 2014); ***see also*** Pa.R.A.P. 313 (governing collateral orders).

Furthermore:

When reviewing a trial court's order on disqualification of counsel, we employ a plenary standard of review. Courts may disqualify attorneys for violating ethical rules. On the other hand, courts should not lightly interfere with the right to counsel of one's choice. Thus, disqualification is appropriate only when both another remedy for the violation is not available and it is essential to ensure that the party seeking disqualification receives the fair trial that due process requires.

***E.R. v. J.N.B.***, 129 A.3d 521, 526 (Pa. Super. 2015) (citation omitted).[6]

_____

[6] Rudalavage incorrectly states the applicable standard of review is abuse of discretion. ***See*** Rudalavage Brief at 3-6. Rudalavage relies on ***Commonwealth v. Boring***, 684 A.2d 561, 565 (Pa. Super. 1996) ("As the **federal court** pointed out, the determination as to whether to disqualify counsel because of a conflict of interest is within the discretion of the trial court." (emphasis added; citation and quotations omitted)). No Pennsylvania

*(Footnote Continued Next Page)*

- 12 -

Appellant argues the trial court erred in failing to disqualify the Munley firm because the conflict of interest created by Mulcahey's extensive prior representation of Appellant was imputable to the other attorneys at Munley where:

> (a) Mulcahey previously represented Appellant in many personal injury cases that were substantially related to the instant case, and he learned confidential information about Appellant;
>
> (b) Munley did not establish a screening protocol until the trial court disqualified Mulcahey in August 2019, **after** Mulcahey inspected the accident scene with an expert and reviewed the Rudalavage complaint;
>
> (c) Munley has never produced a written copy of the purported screening protocol; and
>
> (d) Mulcahey has never seen a writing setting forth a screening protocol, nor have any of the attorneys at Munley signed such a protocol.

*See* Appellant's Brief at 18-19.  Appellant further argues:

> The small size of Munley [], the fact that the alleged screen does not prohibit attorneys from discussing this case in the presence of Attorney Mulcahey, and the fact that there is no strong prohibition against breach of the policy — as no employee was required to sign the policy and the only attorney from Munley [] who testified before the trial court, Attorney Mulcahey, had not seen the policy and was not aware of its contents — weigh against the effectiveness of any purported screen.

---

case has applied the abuse of discretion standard announced in ***Boring***.  To the contrary, numerous decisions apply the plenary standard of review to disqualification cases.  ***See***, ***e.g.***, ***Weber v. Lancaster Newspapers, Inc.***, 878 A.2d 63, 80 (Pa. Super. 2005) ("When reviewing a trial court's order on disqualification of counsel, we employ a plenary standard of review." (citing ***Vertical Res., Inc. v. Bramlett***, 837 A.2d 1193, 1201-02 (Pa. Super. 2003)).

*Id.* at 19. Finally, Appellant asserts Munley failed to comply with the provisions of Pa.R.P.C. 1.10(b)(2) (requiring "written notice [to be] promptly given to the appropriate client to enable it to ascertain compliance with the provisions of this rule."). Appellant's Brief at 18-19.

Our review reveals no precedential Pennsylvania authority with a controlling analysis for the adequacy of a law firm's conflict protocol under Rule 1.10(b). However, numerous non-precedential decisions have employed the factors identified in *Dworkin v. General Motors Corp.*, 906 F. Supp. 273 (E.D. Pa. 1995)[7] ("*Dworkin* factors"). *Id.* at 279-80 (adopting the non-exhaustive list of factors enumerated in *Maritrans GP, Inc. v. Pepper, Hamilton & Scheetz*, 602 A.2d 1277, 1289 (Pa. 1992) (Nix, C.J., dissenting)); *see also Rippon v. Rippon*, 2014 Pa. Dist. & Cnty. Dec. LEXIS 1, at *19 (C.C.P. Dauphin 2014) (applying *Dworkin* factors);[8] *Royal Bank of Pa. v. Walnut Square Partners*, 2006 WL 771457, at *3; 2006 Phila. Ct. Com. Pl. LEXIS 147, at *8 (C.C.P. Phila. 2006) (same).

---

[7] Where we are unable to find Pennsylvania precedent, "we may look to federal case law for its persuasive value." *Beemac Trucking, LLC v. CNG Concepts, LLC*, 134 A.3d 1055, 1061, n.4 (Pa. Super. 2016).

[8] While "decisions of the Court[s] of Common Pleas are not binding precedent[], they may be considered for their persuasive authority." *Wilson v. Parker*, 227 A.3d 343, 356 (Pa. Super. 2020) (citation omitted).

Instantly, we, like the trial court, find the **Dworkin** factors instructive and appropriate in examining whether Munley should be disqualified. ***See*** Memorandum and Order, 1/26/21, at 3.

The **Dworkin** factors include:

1. the substantiality of the relationship between the attorney and the former client

2. the time lapse between the matters in dispute

3. the size of the firm and the number of disqualified attorneys

4. the nature of the disqualified attorney's involvement

5. the timing of the wall.

**Dworkin**, 906 F. Supp. at 279-80 (quoting **Maritrans**, 602 A.2d at 1289).

The features of the wall itself should also be considered, including:

a. the prohibition of discussion of sensitive matters

b. restricted circulation of sensitive documents

c. restricted access to files

d. strong firm policy against breach, including sanctions, physical and/or geographical separation[.]

***Id.*** at 280 (quoting ***Maritrans***, 602 A.2d at 1289). Finally, the burden of proving compliance with the screening exception of Rule 1.10(b) is on the law firm whose disqualification is sought. ***See Dworkin***, 906 F. Supp. at 279; ***Rippon***, 2014 Pa. Dist. & Cnty. Dec. LEXIS 1, at *14-15 (collecting federal cases).

Before analyzing the **Dworkin** factors, we recite below the trial court's verbatim reasoning for declining to disqualify the Munley firm:

> In looking at the substantiality of the relationship between the attorney (Mulcahey) and the former client ([Appellant]), while it certainly appears that Mulcahey represented [Appellant] during his time at Lenahan [] on numerous matters, upon closer inspection, a significant number of those matters did not involve the "same or substantially similar" types of cases as are presented in **Darrow** and **Rudalavage**. Additionally, Mulcahey was one of several attorneys in the Lenahan [] firm servicing [Appellant] (including counsel for [Appellant] in the **Rudalavage** matter, herself an alumna of the Lenahan [] firm). Considering the time lapse between the matters in dispute, although the record does not disclose the last [Appellant] case Mulcahey worked on while at Lenahan [], we do know that he joined the Munley firm in February 2014. . . . Considering the size of the [Munley] firm and the number of disqualified attorneys, the record suggests the Munley firm consists of ten attorneys, several of whom ha[ve] prosecuted cases against [Appellant] both before and after Mulcahey's association with the Munley firm. In considering the nature of the disqualified attorney's (Mulcahey) involvement, the record reflects that . . ., in the **Rudalavage** matter, Mulcahey accompanied an expert to the scene of the accident, appears to have had minimal interaction with the expert and reviewed a draft of a Complaint which had been prepared by another lawyer in the Munley firm. The timing of the wall is troublesome, at least in the **Darrow** matter. The record reflects that the wall was established subsequent to our Opinion and Order in August 2019. The testimony of *Andrea Martino*[9] reflects that it was put in place in September 2019. This is more than two years after the commencement of the **Darrow** matter.
>
> With respect to the features of the wall itself, while they could benefit from some improvements, we find that they pass muster. *Andrea Martino* testified regarding the prohibition of

---

[9] This is the first of the trial court's three incorrect identifications of Andrea Martino (Appellant's legal operations manager) as the witness who testified on behalf of Munley, when the court presumably meant Maria Elkins (Munley's chief operations officer). We italicize the error, which was likely an oversight, although it could be viewed as a factual finding not supported by the record.

discussion of sensitive matters, the restriction placed on the circulation of sensitive documents and access to files, and the strong firm policy against breach, including sanctions. In addition, Mulcahey's testimony reflects that he had no discussion with any other members of the Munley firm regarding either of these cases, and there is nothing in the record to contradict that. . . .

[] Conclusion.

We find Attorney Mulcahey's testimony credible. Additionally, *Andrea Martino*'s skepticism as to whether Mulcahey communicated any inside information from [Appellant] to the Munley firm buttresses Mulcahey's testimony that he has not. Considering all the factors we must, and in light of the testimony of the Munley firm's representative with respect to its screening process, we will not disqualify the Munley firm from pursuing either of these cases. We cannot ignore the choice made by the Plaintiffs in each of these cases to choose their counsel. **See** Comment 4 to Pa.R.P.C. 1.9 [(stating, *inter alia*, "the Rule should not be so broadly cast as to preclude other persons from having reasonable choice of legal counsel.")]. We find that Munley [] has met its burden . . . in demonstrating that its screening process is adequate.

Memorandum and Order, 1/26/21, at 7-9 (footnote and italics added; citation modified; some capitalization omitted).

Upon review, we disagree with the trial court's weighing of the **Dworkin** factors and address each in turn.

*Factor 1 - Substantiality of the relationship between Mulcahey and Appellant*

There is no question Mulcahey had a substantial relationship with Appellant; he represented, *i.e.*, defended Appellant in numerous lawsuits over 18 years and gained significant proprietary knowledge about Appellant's internal operations and litigation strategy. Rudalavage argues this factor does not weigh in favor of disqualification, asserting,

> while Attorney Mulcahey may have represented [Appellant] over the course of his 18 years at Lenahan . . . in 35 to 48 cases, only at most a small handful of those cases involved injuries on land owned by [Appellant], and none of those cases involved the same road as the same land where [] decedent in this case sustained his injuries.

Rudalavage Brief at 34.

Rudalavage's argument is flawed; simply because a "small handful" of cases that Mulcahey defended on behalf of Appellant involved land owned by Appellant, and none involved the same road in the Rudalavage case, does not mean that Mulcahey's representations are not substantially related for purposes of disqualification, particularly where Mulcahey's lengthy tenure as outside counsel necessitated his familiarity with proprietary and confidential information, including Appellant's internal operations and litigation strategy. **See**, **e.g.**, Pa.R.P.C. 1.9, cmt. 3, **supra** (explaining "substantially related" matters). This factor weighs in favor of disqualification.

*Factor 2 - The time lapse between the Rudalavage case and Mulcahey's prior representation of Appellant*

The record indicates a time lapse of over 5 years between the representations. This factor does not weigh in favor of disqualification.

*Factor 3 - Size of Munley and number of disqualified attorneys*

The Munley firm is relatively small, consisting of approximately 10 attorneys. A law firm's small size is "a detriment rather than an asset in implementing an effective screen" because there is more contact between the attorneys. **Dworkin**, 906 F. Supp. at 280 (citation omitted); **see also Royal**

***Bank of Pa.***, 2006 Phila. Ct. Com. Pl. LEXIS 147, at \*9; 2006 WL 771457, at \*3 (relatively small size of 14-attorney firm was a factor in finding screening protocol ineffective).  This factor weighs in favor of disqualification.

*Factor 4 – The nature of Mulcahey's involvement*

Though Mulcahey was never counsel of record for Rudalavage, he was *de facto* counsel when he reviewed the complaint and attended, with an expert, an inspection of the accident scene.  ***See*** N.T., 1/24/20, at 102-03. Mulcahey's involvement gives the appearance of impropriety.  ***See, e.g.***, Pa.R.P.C., Preamble 6 (under the Rules of Professional Conduct, lawyers and judges "should further the public's . . . confidence in the justice system[.]").  Moreover, the record belies the claim of Rudalavage/Munley that Appellant "failed to establish [] Mulcahey had any substantive involvement whatsoever in the *Rudalavage* case even before he was formally screened from participation."  Rudalavage Brief at 36.  This factor weighs in favor of disqualification.

*Factor 5 – The timing of the wall*

As stated above, Elkins created Munley's screening protocol in September 2019, after Mulcahey's disqualification a month prior in the Darrow case.  ***See*** N.T., 1/24/20, at 79-80, 83; ***see also id.*** at 83 (Elkins stating there was no screen prior to September 2019).  However, as Appellant correctly points out, Elkins' testimony is contradicted by correspondence,

dated October 9, 2019, from Rudalavage's counsel to Appellant's counsel.  The

letter states, in relevant part:

> Mulcahey has been employed [at Munley] for almost six years. Because of our respect for you, we tried to accommodate your request and agreed to a "screen" as outlined by the rules. Unfortunately, you returned to us with requests that are not contemplated by the rules.  Your letter prompted us to review the entire matter in detail and **we have come to the conclusion that there is no conflict with regard to this particular case and [] Mulcahey**.  Therefore, we will not be providing you with documentation regarding screening protocol.

Motion to Disqualify, 10/21/19, Exhibit G (emphasis added); ***see also***

Appellant's Reply Brief at 11.   This ***Dworkin*** factor weighs in favor of

disqualification.  The record indicates Munley did not implement a screen when

Rudalavage retained the Munley firm, and never provided Appellant with

documentation of the screen they purported to implement afterwards.  ***Cf.***

***Dworkin***, 906 F. Supp. at 280 (noting importance of screening protocol "at

the time when the potentially disqualifying event occurred, either when the

attorney first joined the firm or **when the firm accepted a case presenting**

**an ethical problem**." (emphasis added; citation omitted); ***Rippon***, 2014 Pa.

Dist. & Cnty. Dec. LEXIS 1, at *14 (disqualification of law firm employing an

attorney with conflict of interest under Rule 1.9 "can be avoided," pursuant to

Rule 1.10(b), "when a proper screen . . . is established **prior to the arrival**

**of the new attorney at the firm** and when it is a formal, **written**, screening

procedure." (emphasis added)).

*Final factor – The features of the wall*

This factor also weighs in favor of disqualification. The record establishes that (a) none of the Munley firm attorneys, including Mulcahey, signed a written screening protocol (nor has Munley produced a writing); (b) Mulcahey never saw any writing substantiating the screening protocol; and (c) Mulcahey testified, "I don't know what it [the screening protocol] states[.]" N.T., 1/24/20, at 81, 117; ***see also*** Pa.R.P.C. 1.0, cmt. 9 ("To implement, reinforce and remind all affected lawyers of the presence of the screening, it may be appropriate for the firm to undertake such procedures as a written undertaking by the screened lawyer to avoid any communication with other firm personnel and any contact with any firm files or other information . . . "). Notably, Elkins testified she never created a screening protocol prior to this case. N.T., 1/24/20, at 79-80; ***see also id.*** at 81-82 (Elkins stating she did not review screening requirements prior to establishing the screen).

Considering the above factors, we conclude Munley failed to meet its burden to establish compliance with Rule 1.10(b). Additionally, Munley failed to provide Appellant with prompt written notice of Mulcahey's conflict of interest, in violation of Rule 1.10(b)(2). The following rationale is compelling:

> A client should not discover from his or her now attorney that his then attorney, with whom he closely worked, is working for the opposition and has not disclosed it. **The lack of disclosure raises a specter of impropriety that no *ex post facto* Chinese Wall can contain**. Put another way, the doubt created by infidelity can never be cured and the court will not instruct a party to overlook it so that one client may have counsel of his

choice, especially when the firm was in a position to avoid the harm complained of.

***Royal Bank of Pa.***, 2006 Phila. Ct. Com. Pl. LEXIS 147, at *7; 2006 WL 771457, at *2 (emphasis added).

For the above reasons, we reverse the order denying Appellant's motion to disqualify, and remand for entry of an order precluding the Munley firm and its attorneys from representing Rudalavage in the underlying litigation.

Order reversed. Case remanded for proceedings consistent with this decision. Jurisdiction relinquished.

P.J. Panella joins the opinion.

P.J.E. Stevens files a dissenting statement.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/4/2022