J-A10029-26

2026 PA Super 121

| | | |
|---|---|---|
| ESTATE OF CARLONE S. FELLMAN, DECEASED | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: HARLEY FELLMAN, AND WALTER KUCZERIAWENKO | : | |
| | : | No. 1587 EDA 2025 |

Appeal from the Order Entered May 21, 2025
In the Court of Common Pleas of Montgomery County Orphans' Court at
No(s):  2020-X3101

BEFORE:   STABILE, J., LANE, J., and STEVENS, P.J.E.[*]

OPINION BY LANE, J.:                                      **FILED JUNE 12, 2026**

Harley Fellman ("Grandson") and Walter Kuczeriawenko ("Walter") (collectively, "Appellants") appeal from the order overruling their objections to the amended accounting of the Estate of Caroline S. Fellman (the "Decedent"), Deceased ("the Estate'), and affirming the amended accounting. We hold, *inter alia*, that pursuant to Pennsylvania Rule of Orphans' Procedure 2.7, an objector shall include all objections to an estate accounting in the written objections or risk waiver, and may not raise a novel claim orally at a hearing on the objections.  We affirm.

Grandson was the Decedent's grandson and, after his mother died, lived with the Decedent.[1]  Walter was in a relationship with the Decedent for twelve years, and together they ran 2UP, LLC ("2UP"), "a promotions company that . . . put on motorcycle shows."  N.T., 9/18/24, at 71-72.  The executor of the

_____

[*] Former Justice specially assigned to the Superior Court.

[1] **See** Appellants' Brief at 14.

Estate is Decedent's brother, William Fellman ("Executor"), a retired general contractor. *See* N.T., 11/20/24, at 81.

The Decedent died on June 26, 2020, while a resident at Suburban Woods Health and Rehabilitation Center ("Suburban Woods"), a nursing facility.

> [Decedent's will] left: (1) a specific $10,000 bequest to a friend; (2) any business interest she then owned in 2UP, LLC . . . to Walter, her longtime partner; and, (3) the residue to be divided 55% to [Grandson], 35% to [Executor], and 10% to Walter. Letters Testamentary were granted to [Executor in November 2020.]

Orphans' Court Opinion, 8/27/25, at 1-2 (footnote omitted).

Executor filed an accounting of the Estate, and an amended accounting in February 2023.[2] The largest Estate asset was $270,000, representing the proceeds of the private sale of the Decedent's house. Bank accounts and various "refund[s]" comprised the remaining $15,087.07 of the Estate. First and Final Account, 12/28/22, at 3 (unnecessary capitalization omitted). The accounting also itemized disbursements paid by the Estate, including: (1) $72,500 to Suburban Woods; (2) $7,906.20 for the "payoff" of a Buick car lease; and (3) several medical expenses. *Id*. at 5.

_____

[2] The amended accounting merely set forth the same assets as those listed in the original accounting, but made no mention of disbursements, and added a "reserve of $7,510" for attorneys' fees and costs for, *inter alia*, "future matters surrounding litigation [of] objections to the account." Amended Account, 2/3/23, at 2.

In February 2023, Appellants filed joint objections to the accounting, challenging disbursements paid by the Estate and alleging Executor improperly withheld 2UP assets from Walter.  The Orphans' Court noted that this matter "was called for audit . . . on April 3, 2023."  Adjudication, 5/21/25, at 1.[3]  The court then held evidentiary hearings over three days, from September 2024 to January 2025.

During this time, Appellants' counsel negotiated with Suburban Woods, which ultimately refunded the $72,500 claim and gave an additional $5,000 to the Estate.  The attorney for Suburban Woods, who attended the first and second days of hearings, denied that its claim against the Estate was fraudulent, but explained it had decided to "cut their losses[ and] stop incurring further fees and costs."  N.T., 11/20/24, at 5, 18.

By way of background, we note that issues of waiver pervaded this matter.[4]  At the hearings, both Executor and the Orphans' Court suggested that Appellants waived many of their claims for failing to include them in the written objections.  *See* N.T., 9/18/24, at 49-54.  The court opined that Appellants could not raise new objections orally mid-hearing, for which

_____

[3] For identification purposes, we note the underlying order, filed May 21, 2025, was entered as an "Adjudication" on the trial docket.  The title on the face of the document, however, is "Estate of Caroline S. Fellman, AKA Caroline Fellman, Deceased."

[4] Because of the large number of issues, we do not review the relevant procedural history of each claim here, but discuss them in our analyses *infra*.

J-A10029-26

Executor had no notice and thus no opportunity to prepare. *See id*. at 52-53, 59. Appellants responded they were unable to raise the claims earlier due to Executor's "failure to provide information[,] a breach of [his] fiduciary duty," and thus they did not "have enough information to know what to object [*sic*]." Orphans' Court Opinion, 8/27/25, at 6; *see also* N.T., 9/18/24, at 51.

Executor and the Orphans' Court then reasoned that Appellants should have sought any documentation they desired through discovery. *See* N.T., 9/18/24, at 48. Appellants replied that this "misses the point," as their objection was that Executor bore a fiduciary duty, having "nothing to do with discovery," "to provide sufficient information . . . as to the accuracy of the accounting." *Id*. at 48-49. The court disagreed and ruled the issues were "limited to the objections that [were] filed," Appellants could not raise new objections for the first time at the hearing, and they could have instead amended their objections, "which happens all the time." *Id*. at 54, 59.

On May 21, 2025, the Orphans' Court issued the underlying order, overruling all of Appellants' objections, but awarding them $10,000 in attorneys' fees in connection with Suburban Woods' refund of its claim. Otherwise, the court affirmed the amended accounting. Appellants filed a timely notice of appeal.[5] They and the Orphans' Court have complied with Pa.R.A.P. 1925.

---

[5] *See* Pa.R.O.C.P. 8.1 (providing that generally, "no exceptions or post-trial motions may be filed to any order or decree of the" Orphans' Court).

- 4 -

Appellants present the following issues for our review:

1. Whether the [Orphans' Court] erred as a matter of law and/or fact or committed an abuse of discretion by failing to find [Executor] breached his fiduciary duty to make full disclosure to [Appellants], and withholding from [them] evidence necessary to prove their objections to the accounting.

2. Whether the [Orphans'] Court erred as a matter of law and/or fact or committed an abuse of discretion when it failed to disqualify attorney Joseph McDonald[, Esquire ("Attorney McDonald"),] when he breached his duties as counsel to "[Executor] as Accountant for the estate."

3. Whether the [Orphans'] Court erred as a matter of law and/or fact or committed an abuse of discretion when it failed to dismiss the accounting where [Executor] was not a licensed attorney and represented the [E]state, in fact practicing law without a license Attorney McDonald having asserted he, McDonald, was representing [Executor] only and had no fiduciary duty to Beneficiaries [*sic*].

4. The [Orphans'] Court erred as a matter of law and/or fact or committed an abuse of discretion when the Adjudication is unsupported by, and in many instances contrary to, facts on the record. More concisely:

   a. [Orphans'] Court abused its discretion regarding the value of [the Decedent's house] where its decision was contrary to evidence on the record.

   b. Objection 1. [Executor] did not produce the lease contract, it was not on the record and there was no evidentiary basis for the Court to determine the contractual obligation for early lease termination on this vehicle was the amount properly paid by [Executor] as a fiduciary responsibility to pay the debts of the Estate.

   c. The evidentiary record is contrary to the Court's finding that it was the Decedent's clear understanding from the time she entered the facility that that her room and board (not services) were to be private pay. Suburban Woods refunded the paid claim in a private agreement with [Executor's] defense attorney to prevent Appellants[] from

- 5 -

proving that [Executor] failed his fiduciary duty to determine that Blue Cross had paid the charges.

d. Objections 3 through 6 referred to claims asserted to have been paid by [Executor] were overruled, the Adjudication stating, "[Appellants] having the burden of proof, no evidence was presented by [Appellants] regarding Objections 3 through 6." The Court committed an error of law when it failed to shift the burden of proof to [Executor] due to a significant discrepancy where [Executor] failed to produce valid vouchers or disclose facts relevant to the estate. (**See Strickler Estate**, [47 A.2d 134 (Pa. 1946)].)

e. [Orphans'] Court committed an error of law when it overruled the Objection to the discrepancy on the underpayment of Pennsylvania Inheritance tax when the burden shifted because a significant discrepancy existed when the evidence showed an unaccounted for, taxable distribution from Decedent's checking account of approximately $121,949.17, in April 2020, less than three months prior to Decedent's death.

f. The Court erred as a matter of law when the issue regarding the 2UP . . . equipment was not dispositive of [Executor's] breach of his fiduciary duty where [Executor] intentionally destroyed evidence of damages and difficulty in fixing the exact amount of damages does not constitute a legal obstacle in the way of their allowance.

Appellants' Brief at 5-8.

We first observe that, including the sub-issues, Appellants raise an excessive number of claims — nine. The Orphans' Court similarly reasoned: (1) "[t]hroughout this litigation, Appellants question[ed Executor] about each and every payment he made, no matter how small[;]" and (2) on appeal, "Appellants have asked the Superior Court to overrule every single one of the . . . court's findings . . . (except, not surprisingly, an award of $10,000 for Appellants' counsel fees)." Orphans' Court Opinion, 8/27/25, at 6, 12-13. We

- 6 -

remind Appellants' counsel: "The effectiveness of appellate advocacy may suffer when counsel raises numerous issues, to the point where a presumption arises that there is no merit to any of them." ***Commonwealth v. Snyder***, 870 A.2d 336, 340 (Pa. Super. 2005) (citation omitted).

In their first issue, Appellants aver the Orphans' Court erred in failing to find Executor "breached his fiduciary duty to make full disclosure . . . and [withheld] evidence necessary to prove their objections to the accounting." Appellants' Brief at 16. We consider the applicable standard of review:

> When reviewing a decree entered by the [O]rphans' [C]ourt, this Court must determine whether the record is free from legal error and the court's factual findings are supported by the evidence. Because the [O]rphans' [C]ourt sits as the fact-finder, it determines the credibility of witnesses and, on review, we will not reverse its credibility determinations absent an abuse of that discretion.
>
> > As an appellate court we can modify an orphans' court decree only if the findings upon which the decree rests are unsupported by competent or adequate evidence or if there has been an error of law, an abuse of discretion or a capricious disbelief of competent evidence. The test to be applied is not whether we, the reviewing court, would have reached the same result, but whether a judicial mind, after considering the evidence as a whole, could reasonably have reached the same conclusion.
>
> Moreover, "[o]ur scope of review is also limited: we determine only whether the court's findings are based on competent and credible evidence of record."

***In re Beam***, 342 A.3d 7, 13-14 (Pa. Super. 2025) (citations omitted).

Pennsylvania Rule of Orphans' Court Procedure 2.7 governs objections to an accounting:

(a) ***Objections to an Account*** and/or a petition for adjudication/statement of proposed distribution ***shall be filed with the clerk on or before the time and date of the audit*** in those counties holding an audit, and by a specified date in all other counties, with a copy served on the accountant or the accountant's counsel, if represented, and to each interested party and claimant who received the notice pursuant to Rule 2.5, to the extent known, pursuant to Rule 4.3.

(b) ***Objections shall be in writing***, with consecutively numbered paragraphs, signed by counsel, or if not represented by counsel, then by all the objectors in accordance with Rule 3.12. Objections shall be verified by at least one of the objectors in accordance with Rule 3.13.

(c) ***Each objection shall:***

(1) ***be specific as to description and amount***;

(2) raise one issue of law or fact, but if there are several objections relating to the same issue, all such objections shall be included in the same paragraph as subparts; and

(3) briefly set forth the reason or reasons in support thereof.

(d) The court may extend the time for filing objections.

Pa.R.O.C. 2.7(a)-(d) (emphases added).

When interpreting our Rules of Orphans' Court Procedure, "our standard of review is *de novo* and our scope of review is plenary." ***In re K.M.D.***, 261 A.3d 1055, 1059 (Pa. Super. 2021). We apply the Statutory Construction Act,[6] which

directs that the object of all interpretation and construction of statutes is to ascertain and effectuate the legislature's intent. 1 Pa.C.S.[A.] § 1921(a)[.] Generally, the best indicator of

_____

[6] ***See*** 1 Pa.C.S.A. §§ 1501-1991.

legislative intent is the plain language of the statute. In construing statutory language, "[w]ords and phrases shall be construed according to rules of grammar and according to their common and approved usage[.]" 1 Pa.C.S.[A.] § 1903(a). When the words of a statute are clear and unambiguous, there is no need to look beyond the plain meaning of the statute "under the pretext of pursuing its spirit." 1 Pa.C.S.[A.] § 1921(b)[.] Moreover, "[s]tatutes *in pari materia* shall be construed together, if possible, as one statute." 1 Pa.C.S.[A.] § 1932.

*McWilliams v. McWilliams*, 324 A.3d 602, 608 (Pa. Super. 2024) (some citations omitted).

For ease of discussion, we first set forth the Orphans' Court analysis of this issue. It reasoned that, pursuant to Pa.R.O.C.P. 2.7, Appellants waived their claim — that Executor breached his fiduciary duty to provide evidence — for failure to include it in their written objections. The court reiterated its opinion that Appellants could not raise new objections for the first time at the hearing. *See* Orphans' Court Opinion, 8/27/25, at 6. On the merits, the court again reasoned that Appellants should have sought discovery during the nineteen months between their filing of the objections and the first hearing, and ultimately, "the parties and the court sat through three full days of testimony and evidence which did little to support Appellants' . . . objections." *Id*. at 7.

On appeal, Appellants assert that they "did raise the issue of [Executor's] breach of his duty to make full disclosure," and the court "incorrectly treat[ed] this [as] a new claim." Appellants' Brief at 17. Appellants further contend that the Orphans' Court "misapplied the law,"

- 9 -

because a fiduciary's "duty to furnish information [is not] conditioned on the rules of discovery," and the court "failed to shift the burden to [Executor] for his breach of his fiduciary duty to provide full information." *Id*. at 17-18. On the merits, Appellants maintain that: they requested bank statements, but Executor "failed to produce any bank statement showing any of the checks for the alleged payments" made by the Estate; "the lease on the Buick was never produced;" and "in each and every occasion, [Executor] and his counsel evaded, avoided, [and] refused to produce information to enable Appellants to understand their rights." *Id*. at 18-19.

We have not discovered case authority explicitly addressing whether Pa.R.O.C.P. 2.7 requires an objector to include all objections to an accounting in their written objections, on pain of waiver, and whether an objector may raise a new claim orally for the first time at a hearing on the objections. After review of Rule 2.7, we conclude that a plain reading of the rule supports such a holding. Subsection (a) explicitly provides that "[o]bjections to an account . . . *shall* be filed with the clerk on or before the time and date of the audit in those counties holding an audit." Pa.R.O.C.P. 2.7(a) (emphasis added). Subsections (b) and (c) provide that "[o]bjections *shall* be in writing," and "[e]ach objection *shall* . . . be specific as to description and amount[.]" Pa.R.O.C.P. 2.7(b)-(c)(1) (emphases added). The use of the word, "shall," in each of these three subsections indicates that the written nature, filing, and specificity of an objection are mandatory. Furthermore, subsection (a)

contemplates that an audit may occur and specifies the chronology of events: first, the filing of objections, and subsequently, the audit. **See** Pa.R.O.C.P. 2.7(a) (specifying that objections "shall be filed . . . **before** the time and date of the audit").

Pursuant to the plain language of these subsections, especially when read together, we conclude that Rule 2.7 requires an objector to file written objections, with specificity, to an estate accounting **before** either "the time and date of the audit" or "by a specified date," where applicable. Pa.R.O.C.P. 2.7(a)-(c). To the extent an objector wishes to raise additional objections, "[t]he court may extend the time for filing objections." Pa.R.O.C.P. 2.7(d). We further hold that under Rule 2.7, the failure to include a claim in the written objections results in waiver, and an objector may not raise a novel theory or claim orally at a hearing. Again, subsection 2.7(a) acknowledges that an audit may be held, and specifies that objections "shall be filed . . . **before** the time and date of the audit." Pa.R.O.C.P. 2.7(a) (emphasis added).

Applying this rule to the case *sub judice*, we agree with the Orphans' Court that because Appellants' written objections did not include any claim that Executor breached his fiduciary duty to provide financial information, they waived this issue before the court. We emphasize that this claim was not presented or even fairly included in the written objections. The written objections enumerated seven challenges to the **disbursements** paid by the Estate only. As the Orphans' Court pointed out, Appellants did not challenge

the valuation of any **asset**, let alone the Decedent's house. **See** N.T., 9/18/24, at 58-59 (Orphans' Court pointing out that the written objections did not "challenge the opening balance"). On this point, we further agree with the Orphans' Court that permitting Appellants to raise a novel claim, for the first time at the hearing, would have unfairly prejudiced Executor, as he would not have had notice nor an opportunity to prepare to address the claim. **See id**. at 52.

We further conclude that no relief is due on Appellants' insistence that they had no obligation to seek any desired information through discovery or court procedures because, as they reason, an estate administrator's fiduciary duty to provide information is not "conditioned on the rules of discovery." Appellants' Brief at 17. This rationale does not address why Appellants' written objections did not allege Executor's breach of fiduciary duty, nor why Appellants did not seek amendment of their written objections after Executor purportedly failed to provide the information sought. For the foregoing reasons, we conclude Appellants waived their allegation — of Executor's breach of a fiduciary duty to provide information — for failure to include it in their written objections. **See** Pa.R.O.C.P. 2.7.

Moreover, even if Appellants had preserved their issue before the Orphans' Court, we would further determine that they have waived their claim for failure to present a developed argument on appeal. An appellant's argument must include "the particular point treated . . . , followed by such

discussion and citation of authorities as are deemed pertinent." Pa.R.A.P. 2119(a). "It is well-established that the failure to develop an argument with citation to, and analysis of, pertinent authority results in waiver of that issue on appeal." ***C.H.L. v. W.D.L.***, 214 A.3d 1272, 1276 (Pa. Super. 2019).

Here, while Appellants repeatedly insist that Executor failed to provide certain information, they do not describe what that information would have shown, nor how it injured them. Appellants claim that Executor bore the fiduciary duty to produce "bank statements," "[t]he lease on the Buick," and notice that "[t]he house was sold." Appellants' Briefs at 18-19. They broadly conclude that "[b]ecause there were no bank statements supporting any alleged transactions alluded to the in Accounting, the Court cannot assume the accounting is valid or accurate." Appellants' Brief at 21. Appellants fail to specify the relief they request, aside from a vague finding that Executor breached his fiduciary duty or a finding that the accounting was inaccurate. For the foregoing reasons, no relief is due on Appellants' first issue.

In their second issue, Appellants aver the trial court erred in not disqualifying Executor's attorney, Attorney McDonald, for breaching his duties as counsel to Executor. By way of background, we summarize the following. After the first evidentiary hearing, Appellants filed a petition to remove

Attorney McDonald.[7]  Appellants relied on a 1995 Montgomery County Orphans' Court decision, **Pew Trust**, 16 Fiduc. Rep. 2d 80 (O.C. Montg. 1995).  Appellants summarized that this opinion held: "[W]here the client is the fiduciary, the fiduciary's lawyer may be charged with special obligations in dealing with a non-client beneficiary.  Hence, [the attorney's] duties run not only to its client, but also to the non-client Trust beneficiaries."  Appellants' Brief at 25.  The Orphans' Court held hearings in October and November 2024, and denied Appellants' petition to remove Attorney McDonald on November 20, 2024.[8]

Subsequently, at the final evidentiary hearing on the objections, Attorney McDonald, in response to Appellants' continued reliance on **Pew Trust**, provided the Orphans' Court with a written argument as to why **Pew Trust** was distinguishable.[9]  Pertinently, this summary stated: "I am representing [Executor] only in the defense of the objections to the accounting.  So, the only person I owe a fiduciary duty to is [Executor, and I

_____

[7] As Appellants had filed a petition to remove Attorney McDonald, they have preserved this issue for our review.  **See** Pa.R.A.P. 302(a) (providing that ("[i]ssues not raised in the trial court are waived and cannot be raised for the first time on appeal").

[8] **See** Orphans' Court Opinion, 8/27/25, at 8.  The notes of testimony of these hearings were not included in the certified record transmitted on appeal.

[9] This document spanned one page and two lines, and was entitled "Fellman Oral Argument on **Pew Trust**."

have no duty to] assist [Appellants] with pursuing objections against the person who hired me to defend him[.]"  N.T., 1/17/25, at 67, 94.

In its opinion, the Orphans' Court suggested: (1) Appellants did not appeal from the order denying their petition to remove Attorney McDonald; and (2) under the doctrine of *res judicata*, this issue "cannot be heard or considered again."  Orphans' Court Opinion, 8/27/25, at 8.

On appeal, Appellants assert that: (1) the order, denying their petition to remove Attorney McDonald, was not a final order and not appealable; and (2) neither *res judicata* nor collateral estoppel barred review of their claim. **See** Appellants' Brief at 23-24.  On the merits, Appellants also challenge Attorney McDonald's above statement, that he was representing Executor "only in the defense of the objections to the accounting" and thus he had no duty to assist Appellants with pursuing the objections filed against his client, Executor.  Appellants again rely on **Pew Trust**, and argue that Attorney "McDonald's responsibility was to assist in supporting facts to support the accounting, not obstruct Appellants' right to full information."  Appellants' Brief at 27.  Appellants request this Court to remand to the Orphans' Court for the appointment of "proper counsel for the [E]state."  **Id**.

As the Orphans' Court has suggested Appellants failed to appeal from the earlier order, we first review whether the issue is properly before us in the present appeal.  **See, e.g., Calabretta v. Guidi Homes, Inc.**, 241 A.3d 436, 440 n.6 (Pa. Super. 2020) (stating that "[b]ecause we 'lack jurisdiction over

an unappealable order, it is incumbent on us to determine, *sua sponte* when necessary, whether the appeal is taken from an appealable order'"). "To be immediately appealable, a trial court order must be either a final order under Pennsylvania Rule of Appellate Procedure 341, or a collateral order under Appellate Rule 313." ***Dougherty v. Philadelphia Newspapers, LLC***, 85 A.3d 1082, 1084-85 (Pa. Super. 2014). Rule 341 defines a "final order," generally, as an order that disposes of all claims and of all parties. Pa.R.A.P. 341(b)(1). With respect to an appeal from a collateral order, the Pennsylvania Supreme Court

> has delineated three requirements that must be satisfied . . .. The order must be "separable from and collateral to the main cause of action;" it must involve a right that "is too important to be denied review;" and, "if review is postponed until final judgment, the claim will be irreparably lost." The doctrine is to be narrowly interpreted[,] as it is an exception to the rule of finality.

***Dougherty***, 85 A.3d at 1085 (citations omitted).

This Court has permitted an appeal from an order denying a motion to disqualify an attorney from serving as counsel to another party, where the appellant established the three collateral order factors above. ***See id***. at 1086. However, this Court has also held that where a party could have taken an immediate appeal from a collateral order, but opts to wait to appeal from a subsequent, final order, the party does not waive that issue for appellate review. ***See In re Estate of Petro***, 694 A.2d 627, 630-31 (Pa. Super. 1997) (stating that "[w]e can find no rule of law, either statutory or common law, which states that a collateral order ***must*** be appealed within 30 days of its

- 16 -

entrance or an appeal based upon the substance of the collateral order is forever precluded").

Here, Appellants could have sought to appeal from the order denying their petition to remove Attorney McDonald. **See Dougherty**, 85 A.3d at 1085. Their decision to not file a notice of appeal at that time, however, did not result in waiver of appellate review of any challenges to that order. **See In re Estate of Petro**, 694 A.2d at 630-31. Thus, we determine Appellants may challenge, in the present appeal, the denial of their petition to remove Attorney McDonald.

Nevertheless, we conclude Appellants have waived their issue, for failure to cite binding, relevant authority to support their argument. **See** Pa.R.A.P. 2119(a); **see also C.H.L.**, 214 A.3d at 1276 (stating "that the failure to develop an argument with citation to, and analysis of, pertinent authority results in waiver of that issue on appeal"). On the merits of their claim, Appellants cite only the 1995 Court of Common Pleas **Pew Trust** decision. **See** Appellants' Brief at 25-27. Decisions of the Courts of Common Pleas, however, are not binding precedent on this Court. **See Feather v. Feather**, 348 A.3d 1148, 1154 n.3 (Pa. Super. 2025). Appellants have not cited any applicable appellate authority addressing the role of an attorney in an estate matter, nor have they averred that after research, they have discovered none. On this basis of waiver, no relief is due on their second issue.

In their third issue, Appellants assert that the Orphans' Court erred in not dismissing the amended accounting, on the ground Executor was not a licensed attorney. Appellants reason that Executor "represented the [E]state" and thus was "in fact practicing law without a license." Appellants' Brief at 28. Appellants rely on ***Norman v. Temple University Health System***, 208 A.3d 1115 (Pa. Super. 2015), for the proposition that "an estate can only act through an agent[, and must] therefore[] be represented by a licensed attorney, [and t]o permit an unlicensed lay administrator to appear *pro se* would be to permit the unauthorized practice of law." ***Id***. at 30.

The Orphans' Court reasoned that Appellants have waived this issue, under Pa.R.O.C.P. 2.7, because they did not include it in their written objections. ***See*** Orphans' Court Opinion, 8/27/25, at 8. On appeal, Appellants respond that they could not have included this issue because Attorney McDonald entered his appearance after they filed the objections.[10] ***See*** Appellants' Brief at 28.

Appellants offer no explanation, however, why they did not seek to amend their objections to include this claim, nor why they did not file any pleading to remove Executor on the ground that he is not an attorney at law. ***See*** Pa.R.O.C.P. 2.7. Additionally, Appellants do not cite the place in the

---

[10] The trial docket confirms that Attorney McDonald entered his appearance ***after*** Appellants filed their objections. Executor's first attorney, Michael VanBuskirk, Esquire ("Attorney VanBuskirk"), had previously filed the accounting and amended accounting.

record where they raised this issue before the Orphans' Court, in contravention of our Rules of Appellate Procedure. *See* Pa.R.A.P. 2117(c)(1)-(4) (requiring the statement of the case to state the place in the proceedings where the appellant raised and preserved issues), 2119(e) (requiring the argument to state the same); *see also Young v. S. B. Conrad, Inc.*, 216 A.3d 267, 274 (Pa. Super. 2019) (stating that "[o]ur appellate courts have long held that an appella[nt] who does not follow Pa.R.A.P. 2117(c) and Pa.R.A.P. 2119(e) waives the related issues due to the defects in his brief"). The notes of testimony for the three days of hearings span more than 400 pages. "It is not this Court's responsibility to scour the record for substantiation that [an] issue has been properly raised." *Hackett v. Indian King Residents Ass'n*, 195 A.3d 248, 255 (Pa. Super. 2018) (citation omitted). For the foregoing reasons, we determine Appellants have waived this issue for our review.[11]

_____

[11] Moreover, even if Appellants had preserved this issue, no relief would be due. On the merits, the Orphans' Court aptly reasoned there is no requirement that the executor of an estate, or the estate accountant who files an account, be a licensed attorney. *See* Orphans' Court Opinion, 8/27/25, at 8-9 & n.6 (*citing* 20 Pa.C.S.A. § 3501.1 (governing a personal representative's filing of an account), Pa.R.O.C.P. 1.3 (definitions)).

Furthermore, Appellants' reliance on *Norman* is misplaced. In that case, the administrator of the estate — who was the decedent's son — filed a *pro se* medical malpractice complaint on behalf of the estate. *See Norman*, 208 A.3d at 1117. This Court reasoned that "non-attorneys may not *represent parties* [or another person's interests] before the Pennsylvania courts and most administrative agencies," and here, the administrator "filed

*(Footnote Continued Next Page)*

Under their fourth issue, Appellants present six additional challenges to the amended accounting. We reiterate that in review of an Orphans' Court decree, we "must determine whether the record is free from legal error and the court's factual findings are supported by the evidence," and we defer to the court's credibility determinations. *In re Beam*, 342 A.3d at 13.

With respect to Executor's role in the administration of an estate, this Court has explained: "Orphans' Court Rule 2.1 provides that an account must state '[t]he dates of all receipts, disbursements and distributions, the sources of the receipts, and the persons to whom disbursements and distributions are made and the purpose thereof[.]'" *Id*. at 14 (*citing* Pa.O.C.R. 2.1(b)(1)).

> By statute, one aspect of the fiduciary duty of the executor is to "take possession of, maintain and administer all the real and personal estate of the decedent . . .." 20 Pa.C.S.A. § 3311. In other words, the executor bears the responsibility to "preserve and protect the property for distribution to the proper persons within a reasonable time." In the performance of his fiduciary duties, the executor must exercise the "judgment, skill, care and diligence that a reasonable or prudent person would ordinarily exercise in the management of his or her own affairs."
>
> When the executor of an estate fails to fulfill his fiduciary duty of care, the court may impose a surcharge against him. A surcharge is a penalty imposed to compensate the beneficiaries for loss of estate assets due to the fiduciary's failure to meet his duty of care; however, a surcharge cannot be imposed merely for an error in judgment. Our Supreme Court has held that a standard of

_____

a complaint on behalf of, and endeavored to represent, the [e]state in this litigation." *Id*. at 1120-21 (emphasis added and citation omitted). *Norman* did not hold, as Appellants argue, that an executor must be an attorney in order to *administer* the estate and file an accounting. Instead, *Norman* concluded that an administrator of an estate could not *represent* the estate *pro se* in a negligence lawsuit against another party.

negligence is applied when evaluating whether an executor's management of an estate warrants a surcharge.

Before the court can impose a surcharge, it must give the executor an opportunity to be heard. ***Ordinarily, the party seeking to surcharge an executor bears the burden of showing a failure to meet the required standard of care.*** . . .

***In re Estate of Westin***, 874 A.2d 139, 144-45 (Pa. Super. 2005) (emphasis added and some citations omitted).

First, Appellants aver the Orphans' Court abused its discretion in affirming "the value of [Decedent's house, $270,000,] where its decision was contrary to evidence on the record." Appellants' Brief at 32. Appellants allege, without further explanation: (1) the Orphans' Court improperly focused on the "'price,' an arbitrary issue," and "failed to consider [Executor's] self-dealing;" (2) "the [E]state would have benefitted by listing the property for sale;" (3) in addition, Grandson had wished to place a bid on the house, did not have the opportunity to do so, and thus suffered an "emotional loss;" and (4) the Estate could have "transfer[ed] the house to [Grandson with] a deed costing a minimum amount." ***Id***. at 32-34.

The Orphans' Court reasoned that Appellants waived any challenge to the valuation of the house by failing to include it in their written objections. We agree. Their written objections made no reference whatsoever to the Decedent's house, the private sale of it, or the sale amount. As the court pointed out at the hearing, Appellants' written objection did not raise any

challenge to "the opening balance." N.T., 9/18/24, at 59. Accordingly, we determine Appellants waived this claim.[12] *See* Pa.R.O.C.P. 2.7.

Second, Appellants aver that because Executor "did not produce the lease contract for the Buick, it was not on the record and [thus] there was no evidentiary basis for the [Orphans'] Court to determine the contractual

_____

[12] The Orphans' Court further opined that in any event, no relief would be due on the merits. The court pointed out the Decedent's will specified that Executor could "sell or exchange by public *or private sale*, on any terms . . . any real or personal property." Orphans' Court Opinion, 8/27/25, at 10 (*quoting* Will, 9/4/19, at 4) (emphasis added). As to the sale amount, the trial court credited the testimony of Executor, a retired licensed general contractor, that: (1) he believed $270,000 was appropriate, as "[t]here was a lot of work . . . that needed to be done[, and the] house had fire code violations;" (2) "[t]he house was not listed because there was a buyer[ and i]t was right in the ballpark;" and (3) the private sale "saved . . . money on the commission." *Id*. at 11. The Orphans' Court also credited the testimony of Executor's witness, a realtor who had walked through the house, that the house "was in need of repair . . . like some flooring, kitchen, bathrooms, a lot of cosmetic work." *Id*.; *see also* N.T., 11/20/24, at 30. Meanwhile, Appellants' witness, a residential appraiser, had based his $340,000 valuation "on a ride-by of the property [and] aerial imagery" and "had no idea what the condition of the property was inside." Orphans' Court Opinion, 8/27/25, at 11-12 (unnecessary capitalization omitted). We reiterate that the Orphans' Court sits as the fact-finder and "determines the credibility of witnesses and, on review, we will not reverse its credibility determinations absent an abuse of that discretion." *In re Beam*, 342 A.3d at 13.

Appellants vaguely allege Executor's "self-dealing," with no further explanation. They have thus waived this argument for failure to present a developed discussion. *See* Pa.R.A.P. 2119(a).

Finally, their argument, "that the [E]state would have benefitted by . . . offering" the house to them, is not clear. Appellants' Brief at 34. To the extent Appellants contend the Estate should have simply transferred the house to Grandson for no payment, by "deed costing a minimum amount," they do not address the consequential loss to the Estate of the proceeds of a sale of the house. *Id*.

obligation for early lease termination." Appellants' Brief at 35. By way of background, we summarize the following. Appellants' written objections averred: "[Executor] failed to preserve the assets of the [E]state by . . . [*f]ailing to promptly return and terminate the lease* on [the] Decedent's Buick automobile, costing the [E]state $7,906.20." Objection to Account, 2/4/23, at 1 (emphasis added). The Orphans' Court reasoned that this objection "goes to timing." Orphans' Court Opinion, 8/27/25, at 13. However, at the hearings, Appellants' "counsel did not ask [Executor] one single question about *when* the car was returned and what, if any, difference it would have made if he had returned it earlier or later." *Id*. Meanwhile, Executor's first attorney, Attorney VanBuskirk, testified that he "had determined, in a phone call with the leasing company, that the $7,906 was an early termination fee." *Id*. at 13-14. The Orphans' Court "found no dereliction" in Executor's paying this fee as a proper Estate expense. *Id*. at 14.

On appeal, as noted above, Appellants now assert that because the lease contract "was not on the record, . . . there was no evidentiary basis for the [Orphans'] Court to determine" whether an early lease termination fee was a proper claim against the Estate. Appellants' Brief at 35. In response to the Orphans' Court suggestion that this is a novel theory, not raised below, Appellants state that they did include this issue in their *Pa.R.A.P. 1925(b) statement*, which stated "there was no evidentiary basis for the court to

determine the contractual obligation for early lease termination." ***Id***. (unnecessary capitalization omitted). Furthermore, Appellants argue: "The issue was that the vehicle should have been returned and the lease terminated. If done properly, demanding the death forgiveness [*sic*] on the balance would have saved the [E]state $7,906.20." ***Id***. at 36.

We agree with the Orphans' Court that on appeal, Appellants now raise a new theory, different from that in their written objections, and have therefore waived it. ***See*** Pa.R.O.C.P. 2.7. In the written objections, Appellants challenged Executor's timeliness in "return[ing] and terminat[ing] the lease." Objection to Account, 2/4/23, at 1. To the extent Appellants rely on their Rule 1925(b) statement — which stated their present claims, "there was no evidentiary basis for the court to determine the contractual obligation for early lease termination" — we determine no relief is due. Appellants may not raise an issue for the first time in a Rule 1925(b) statement. ***See Cabot Oil & Gas Corp. v. Speer***, 241 A.3d 1191, 1196 (Pa. Super. 2020). They have thus waived their claim.

Appellants' third sub-issue concerns the claim made by Suburban Woods, the Decedent's nursing facility, against the Estate. We set forth the following context. This $72,500 claim was for the Decedent's room and board, for which she did not have insurance coverage, and was not for the Decedent's medical treatment. ***See*** Adjudication, 5/21/25, at 3; ***see also*** Orphans' Court Opinion, 8/27/25, at 15. Appellants' written objections averred that Executor

- 24 -

failed to have this claim "recoded and paid by [the Decedent's] Keystone East health insurance" ("Keystone"). Objection to Account, 2/4/23, at 1. At the hearings, however, the Orphans' Court credited "written evidence confirming that it was the Decedent's clear understanding from the time she entered the facility that her room and board (not services) were to be private pay." Adjudication, 5/21/25, at 3. Meanwhile, as noted above, Appellants' counsel negotiated with Suburban Woods, which ultimately refunded the claim amount, with an additional $5,000, to the Estate. *See* N.T., 11/20/24, at 5-6.

At the hearing, both the Orphans' Court and Suburban Woods suggested that Appellants' objection to this claim was now moot. *See id*. at 5-6. Appellants disagreed, insisting that their objection was still relevant, as their claim was that Executor "breached his fiduciary responsibility in even paying" the claim in the first instance because, again, Executor should have submitted the underlying room and board claim to Keystone for payment. *Id*. at 8, 12; *see also id*. at 17 (Orphans' Court explaining that: the only issues before the court were the filed objections; the "healthcare bill . . . was now refunded;" and any other cause of action Appellants wished to make was "new litigation" outside the scope of the objections).

On appeal, Appellants continue to challenge Suburban Woods' claim for room and board. They aver that the Orphans' Court finding, that Decedent understood "that her room and board . . . were to be private pay," was

"contrary" to the evidentiary record. Appellants' Brief at 37. Appellants further allege, without further explanation, that: Executor's "defense attorney" and Suburban Woods made "a private agreement" for the latter to refund the claim, in order "to prevent Appellants[] from proving that [Executor] failed his fiduciary duty to determine that [Keystone] had paid the charges;" and (2) Suburban Woods "probably" decided to return the money "to avoid a criminal investigation." *Id*. at 37-38.

After careful review, we determine the record supports the Orphans' Court denial of relief. As the parties do not dispute that Suburban Woods has refunded the entire amount of the claim, and has given an additional $5,000 to the Estate, we agree with the Orphans' Court that Appellants' objection merits no relief. Additionally, Appellants offer no explanation, let alone evidentiary support, for their claims of a nefarious, "private agreement" between Executor's "defense attorney" and Suburban Woods, nor of Suburban Woods' alleged desire "to avoid a criminal investigation." Appellants' Brief at 37-38. Accordingly, they have waived these allegations for failure to present a developed discussion. *See* Pa.R.A.P. 2119(a); *see also* Orphans' Court Opinion, 8/27/25, at 15 (characterizing Appellants' claim as an "absurd allegation," and pointing out that Appellants failed to even identify which of Executor's two attorneys allegedly conducted the conspiracy). Additionally, Appellants ignore that the Orphans' Court awarded them $10,000 for their efforts in negotiating Suburban Woods' refund of the claim. This last point

contradicts Appellants' claim that it was Executor's counsel who secretly colluded with Suburban Woods to obtain a refund of the claim.

In their fourth sub-issue, Appellants argue the Orphans' Court erred in not shifting the burden of proof to Executor as to three medical claims paid by the Estate. Appellants do not identify these claims aside from referring to them as "Objections 3 through 6." Appellants' Brief at 42. We surmise these claims are: (1) $2,800 paid to Cathedral Village; (2) $1,284.34 to Fox Chase Cancer; and (3) $258.89 to Jefferson Medical Center. *See* Objection to Account, 2/4/23, at 1. The written objections averred that Executor failed to have these claims "recoded and paid by" the Decedent's health insurance policy. *Id*.

The Orphans' Court found, however, that Appellants failed to meet their burden of proof:

> [A]t trial, Appellants failed to provide any testimony or written evidence that, had such items been recoded, Keystone would have paid them. Actually, there was no mention at all of recoding with respect to these disbursements, nor any witness (e.g., an insurance expert or someone knowledgeable from Keystone) who could have educated the . . . court on what difference recoding might or would have made. Had [Appellants] provided such evidence, we agree that the burden might have then shifted. But [it] is absurd to suggest that, simply by raising an objection to an amount which appears in an account, the burden shifts to the [Executor] to prove its accuracy.

Orphans' Court Opinion, 8/27/25, at 18-19 (emphasis omitted).

As stated above, "[o]rdinarily, the party seeking to surcharge an executor bears the burden of showing a failure to meet the required standard

of care." ***In re Estate of Westin***, 874 A.2d at 145. "However, the burden shifts to the executor to present exculpatory evidence when 'a patent error has occurred' or when 'a significant discrepancy appears on the face of the record.'" ***Id***. (citation omitted).

On appeal, Appellants assert the Orphans' Court erred in not shifting the burden of proof to Executor. They aver that where there is "a significant discrepancy on the face of the record," the burden may shift to the executor. Appellants' Brief at 43. Appellants maintain that here, the three claims totaled $5,650.47, which is "over 22%" of the net residual estate available for distribution. ***Id.***

The Orphans' Court disagreed, finding Appellants' "reliance on [a] rarely used distinction to be misplaced." Orphans' Court Opinion, 8/27/25, at 19. The court reasoned that the "narrow" burden-shifting exception applied only when there is a significant discrepancy on the face of the record, and "[t]he sum of the disputed amounts here is a few thousand dollars out of a residuary estate which was several hundred thousand dollars." ***Id***. at 20. The court further considered:

> Appellants seem to be asking the court to take the additional step of requiring that ***every*** facially valid claim must be investigated to the fullest extent possible before paying the claim. To do so would invite endless litigation on every minor expense of an estate and would act as an extreme expansion of the current law regarding the duties of an executor to pay the expenses of the estate, which are based on the standard of what a "prudent [person], under similar circumstances, would exercise in the management of his own estate." . . .

* * * *

. . . Throughout this litigation, Appellants have contended that, because [Executor] simply paid a bill, as a prudent layman might, rather than negotiating the bill to try to pay a lower amount or seeking to have an insurance claim **recoded**, as a lawyer or insurance agent might, he failed at his fiduciary duty and the burden to disprove that contention shifts to [Executor] to prove otherwise. . . .

Orphans' Court Opinion, 8/27/25, at 18-20. The court concluded:

Appellants made no showing of impropriety on the part of [Executor], instead offering their proposition that every expense must not only be accounted for but proven beyond a preponderance of the evidence; however, they mistakenly believe that the mere highlighting of an expense is sufficient to shift the burden of proof to [Executor]. There is no evidence in the record that the expenses paid exceeded [Executor's] authority under 20 Pa.C.S[.A.] § 3311 or otherwise violated fiduciary duties. . . .

**Id**. at 21.

After careful review, we determine that the record supports the Orphans' Court's findings. **See In re Beam**, 342 A.3d at 13-14. Again, Appellants' written objections averred that Executor failed "to have the [three medical claims] recoded and paid by" the Decedent's health insurance policy. Objection to Account, 2/4/23, at 1. On appeal, they do not dispute the Orphans' Court reasoning that they failed to present any evidence or testimony about the coding or recoding of these claims, nor the possibility that that even if the claims were recoded, Keystone would have paid them. **See** Orphans' Court Opinion, 8/27/25, at 18. Instead, Appellants now assert they bore no burden of proof because the sum of these claims was "significant in the context [*sic*]." Appellants' Brief at 43.

We agree with the Orphans' Court that the medical claims, of approximately $2,800, $1,284, and $259, do not constitute a "significant discrepancy on the face of the record" warranting a shift in the burden of proof. Orphans' Court Opinion, 8/27/25, at 19. The sum of the three challenged claims here is approximately $4,343. The Estate's assets totaled $285,087.07. The total "general expenses and debt" paid by the Estate totaled $107,702.01. First and Final Account, 12/28/22, at 3. The three claims at issues were a part of this category. Additional expenses paid by the Estate included: $18,122 for federal, state, and local taxes; $6,905 for funeral expenses; and $4,977 for attorneys' fees. We find no error in the Orphans' Court conclusion that the three claims do **not** constitute a significant discrepancy on the face of the record, and thus Appellants bore the burden of proof. **See In re Estate of Westin**, 874 A.2d at 145. For the foregoing reasons, no relief is due on this issue.

In their fifth sub-claim, Appellants assert the Orphans' Court erred in overruling their objection to "the underpayment of Pennsylvania Inheritance tax when the burden shifted because a significant discrepancy existed when the evidence showed an unaccounted for, taxable distribution from [the] Decedent's checking account of approximately $121,949.17 . . . less than three months prior to [her] death." Appellants' Brief at 45.

Again, by way of background, we set forth the Orphans' Court analysis first. Appellants' written objections stated: "[Executor] improperly **paid**

approximately $12,375[] Pennsylvania Inheritance Tax on assets not subject to the tax." Objection to Account, 2/4/23, at 2 (emphasis added). However, the written objections did "not identify what assets are not subject to the tax that [Executor] allegedly improperly paid." Orphans' Court Opinion, 8/27/25, at 22 (emphasis omitted). The court found this deficiency violated Pa.R.O.C.P. 2.7(c)(3), which requires the objector to "briefly set forth the . . . reasons in support" of their objection. *Id*. Furthermore, at the hearings, "Appellants failed to advise . . . or elicit any testimony on which, if any, assets were not taxable." *Id*. at 23. Finally, the court considered that "the Pennsylvania Department of Revenue issued its Appraisement on October 29, 2021, accepting the inheritance tax return as filed." *Id*. The court thus overruled the objection.[13]

On appeal, Appellants state:

Appellants' counsel acknowledges that, due to the absence of information from [Executor], the basis for the claim, that the Pennsylvania Inheritance Tax was not paid correctly [*sic*]. Counsel understood there was an irrevocable trust, funded more than one year prior to Decedent's death. That would not be subject to the Pennsylvania Inheritance Tax. He therefore

---

[13] The Orphans' Court also pointed out that the Decedent's will directed:

All estate, inheritance and succession taxes payable by reason of my death on any property forming part of my estate for the purpose of such taxation ... whether or not such property passes under my will . . . shall be paid out of the principal of my residuary estate.

Orphans' Court Opinion, 8/27/25, at 22.

believed the inclusion on Schedule G of the Rev.-1500 to "Cit One West Bank" was to that trust[.]

\* \* \* \*

[However, d]uring the litigation it became clear that approximately $80,000[] disappeared from a different Citi Bank account during the one-year period prior to Decedent's death. Any distribution exceeding $3,000[] for less than fair value with that period [*sic*] is also subject to the tax. . . .

Appellants' Brief at 45-46. Appellants thus request this Court remand to the Orphans' Court "to determine the tax liability on that distribution." *Id*. at 46. Appellants further allege: "[Executor] has continued to secret the ownership documents. And Appellants continue to believe production of the bank documents which clarify the titling of the accounts will determine whether and to what extent the accounts were taxable." *Id*.

We determine that Appellants now raise a wholly different theory from the one in their written objections. As the Orphans' Court pointed out, the written objections averred that Executor "improperly paid . . . inheritance tax on assets not subject to the tax," or **overpaid** taxes. Orphans' Court Opinion, 8/27/25, at 22.

Then, out of nowhere, Appellants raised a completely new objection on appeal, . . . that an **underpayment** of inheritance taxes based on some unknown "unaccounted for, taxable distribution from Decedent's checking account of approximately $121,949.17, in April 2020[,] was an unaccounted for distribution from the Decedent's estate a year prior to her death[. T]hey could have objected to the opening balance of the Account, but they did not.

*Id*. at 23 (record citation omitted).

Appellants do not dispute the Orphans' Court opinion that their "claim has been inconsistent." Appellants' Brief at 45. Instead, they respond vaguely, that "due to the absence of information from [Executor], the Pennsylvania Inheritance tax was not paid correctly." *Id*. As Appellants have raised a new issue on appeal, we determine they have waived it for our review. *See* Pa.R.A.P. 302(a).

In their final issue, Appellants aver the Orphans' Court erred in denying relief on their claim that Executor "intentionally destroyed evidence of damages," and argue that their "difficulty in fixing the exact amount of damages [was not] a legal obstacle [to] their allowance." Appellants' Brief at 47.

First, we note that Appellants' written objection averred: "[Executor] improperly withheld from Walter . . . the assets of [2UP] for an extended period of time[,] damaged the property[,] and destroyed information causing him to suffer significant economic harm." Objection to Account, 2/4/23, at 2.

The Orphans' Court opined Appellants have waived this objection for failing to "be specific as to description and amount." Orphans' Court Opinion, 8/27/25, at 24 (*quoting* Pa.R.O.C.P. 2.7(c)(1)). We agree.

As stated above, Rule 2.7(c) requires each objection to "be specific as to description and amount." Pa.R.O.C.P. 2.7(c)(1). Appellants' written objections failed to even identify the assets allegedly withheld, the "information" destroyed, or the amount or manner of Walter's supposed

"economic harm."   Objection to Account, 2/4/23, at 2.   Accordingly, we determine Appellants have waived this issue.[14]  *See* Pa.R.O.C.P. 2.7(c)(1).

For the forgoing reasons, we determine no relief is due on any of Appellants' voluminous claims.   Thus, we affirm the order overruling their objections and affirming the amended accounting of the Estate.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 6/12/2026

_____

[14] Moreover, even if Appellants had not waived their issue, we would determine no relief is due.  The Orphans' Court reasoned, *inter alia*, that although Appellants' claimed a resultant loss of approximately $40,000," they offered no "tax returns, bank account statements, testimony from the advertisers whose business was supposedly lost due to the 'damage' to the computers or any other evidence" in support.  Orphans' Court Opinion, 8/27/25, at 26.

Here, Appellants: (1) do not argue the evidentiary burden shifted due to a significant discrepancy on the face of the record; and (2) do not dispute the Orphans' Court reasoning that they presented no evidence, aside from Walter's unsupported testimony, showing the alleged damages.  *See* Appellants' Brief at 47-50.